Lehigh Coal & Navigation Co. and John L. McMichael, Burgess of Summit Hill, *v.* Inter-County Street Railway, Appellant.

[Marked to be reported.]

*Street railways—Municipal consent—Boroughs—Burgess—Act of May 23, 1893—Parties.*

An ordinance giving the consent of a borough to the use of a street by a street railway company, was passed at a meeting of the borough council called by the president.   The next regular meeting of the council was two weeks afterwards.   About one hour and a half before the time of the regular meeting the ordinance was placed in the hands of the burgess, who did not return it at the regular meeting, but on the following day sent in his veto with a statement of his objections.   *Held*, that under the act of May 23, 1893, P. L. 113, the burgess had a reasonable time within which to examine the ordinance; that his veto was in time, and that the ordinance failed.

Where the railway company attempted to occupy the street, notwithstanding the veto, the burgess had a standing in equity to restrain the construction of the railway.

It may well admit of doubt whether an ordinance adopted at a called meeting is within the meaning of that provision of the act of 1893 that requires a burgess to return an ordinance to which he objects at the next regular meeting of councils.   It would seem that an ordinance passed at

one regular meeting should be promptly placed in the hands of the burgess who would then have until " the next regular meeting " for examination and decision. Per WILLIAMS, J.

Argued May 14, 1895.   Appeal, No. 359, Jan. T., 1895, by defendant, from decree of C. P. Carbon Co., Jan. T., 1895, No. 5, entering injunction against defendant.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain the construction of a street railway in the borough of Summit Hill.

The bill averred:

1. That the said The Lehigh Coal and Navigation Company is a large owner of real estate and taxpayer in said borough.

2. That the said John L. McMichael is the burgess of said borough.

3. That the said defendant is a Pennsylvania corporation, incorporated under the act of May 14, 1889, P. L. 211.

4. That the said defendant, under color of its charter, has commenced work and excavations upon the streets of said borough, for the purpose of constructing and maintaining an electric street railway over and upon the same.

5. The said McMichael alleges that the borough council of the said borough have not legally passed an ordinance granting to said defendant their consent or license to enter upon the said streets for the purposes aforesaid; and that the said defendant has entered upon said streets without the legal consent of the said borough, and in defiance of law.

6. That it is a condition precedent to the entry of said defendant upon said streets, for the purposes aforesaid, that it must have legal consent of the borough council, by ordinance legally and regularly adopted.

7. That if the defendant is permitted to enter upon the said streets, dig up and excavate them, complainants will suffer irreparable injury.

8. That said burgess protested against the entry of said defendant upon said streets, for the purposes aforesaid ; but that said defendant, in defiance of such protest, has entered upon and is excavating and committing a nuisance on the said streets.

The answer of the defendant admitted the truth of the 1st, 2d, 3d, 4th and 8th paragraphs of the bill, excepting the commission of nuisance, and as to the 5th, 6th and 7th, it said they are incorrect and untrue. The defendant further denied that the plaintiffs have any standing in a court of equity; that they have no rights which are in anywise injured or disturbed; and that it is committing no nuisance on the streets of said borough.

CRAIG, P. J., filed an opinion which was in part as follows:

" Under the evidence it is difficult to say when the ordinance of consent was passed by the council, and what were its exact terms. There was a vote on the 7th of September, 1894, giving the defendant a right of way subject to the ordinance to be passed."

" Then, on the 11th of September following, there is this on the minutes: ' On motion that the electric railroad ordinance be read for the first time.' What this ordinance was we are not informed.

" Next, on the 5th of October, 1894, the ordinance marked exhibit 7 was passed by a proper vote, according to the minutes; but, according to the testimony of James S. Smith, the secretary of the council, this ordinance was not passed finally on this date, but was 'read twice,' 'had two readings,' and finally passed on the 16th of October, 1894. In another part of his testimony, he says it was not passed finally until the 2d of November, 1894 (the minutes do not show this), and that what was passed on the 16th of October, 1894, was not the same ordinance that had been acted on on the 5th of October, 1894, but was a resolution, and differs in some of its wording from the ordinance of the 5th of October.

" On the 8th of October, the ordinance of the 5th of October was ordered to be published in the Lansford Weekly Leader.

" It appears in this paper for the first time on the 17th of October, 1894, signed by W. T. Jones, president of council, and attested by J. T. Smith, secretary. The conclusion of the advertisement is ' first passed on the 5th of October, 1894,' and it was finally enacted and passed this 2d day of November, 1894.

" It is undisputed that the ordinance was not presented to the chief burgess for approval until about 6 o'clock P. M. of the 2d of November, 1894, at his house, and that the council met on that day at the town hall, about half-past seven in the evening. [2]

" On the 6th of November, 1894, the burgess vetoed the ordinance. As to what was done after this, we are not advised, as the evidence does not come down later. If the ordinance of the 5th of October, 1894, was not finally passed until the meeting of the 2d of November, 1894 (being two regular and successive meetings,) then clearly the ordinance which was presented that day to the chief burgess had not yet passed council, and he was not bound to notice it then. [If, however, it be conceded that the ordinance of the 5th of October, 1894, was then legally passed, or that the resolution of the 16th of October was then legally passed, was the presentation of either to the chief burgess, about 6 o'clock in the evening of the 2d of November, the next regular meeting thereafter, a compliance with law? The purpose of this presentation is to receive the approval of the burgess. 'If he approve he shall sign it, but if he shall not approve, he shall return it with his objections to said council at the next regular meeting thereof, when said objections shall be entered at large in the minute book, and said council shall proceed to a reconsideration of such ordinance or resolution,' (Purd. Dig., 12th ed., vol. 1, p. 348, plac. 172.) We hold that the presentation of the ordinance or resolution to the chief burgess for his approval, about an hour and a half before the next regular meeting of council, is not a compliance with the law. He is the chief officer of the borough, and responsible by virtue of his election for the proper supervision and execution of all ordinances and laws pertaining thereto. Surely, he is entitled to a reasonable time for the consideration of all ordinances and resolutions that are presented to him for approval. How can he (in case he disapprove) return an ordinance or resolution passed by council, with his objections, at the next regular meeting thereof, if he have not a reasonable time to do it? The law fixes no time of service; and we need decide no more in this case than to say, that the time of service or presentation of the ordinance or resolution (assuming them to have been legally passed on the 5th and 16th of October respectively) was too short to comply with the law:] [3] (Purd. Dig., 12th ed., vol. 2, p. 2007, plac. 3 ; Amer. and Eng. Ency. of Law, vol. 5, p. 32.)

" [It follows, then, that the defendant, neither by the ordinance of 5th of October, nor by the resolution of 16th of October, has

that consent of the local authorities which is prerequisite to its right to enter upon the streets of the borough of Summit Hill and lay down a railroad track. In this record it can make no difference whether the legal consent is by ordinance or resolution. Both are governed by the same rule: Kepner v. Com., 40 Pa. 124.] [4]

"But it is contended that the permit, given by street commissioner John Fink, dated 12th October, 1894 (Exhibit 12), was a legal consent to the defendant to occupy the streets of the borough for railway purposes. Evidently, this paper cannot be construed to give the defendant the consent of the local authorities permanently to occupy their streets with an electric railway.

"The subsequent action of the borough authorities shows that they did not so interpret this permit, nor ratify it; but, on the contrary, by their action on the 5th of October, the 16th of October, and the 2d of November, they showed that their consent must be given by ordinance or resolution.

"In addition to the construction put upon the term 'consent of the local authorities' by the action of the town council all through this matter, to wit, that it must be given by ordinance, or resolution, regularly passed, we think, and so hold, that this consent can only be obtained in this manner. This ordinance, or resolution, is in the nature of a contract between the borough and the defendant. Each has something to do, and to receive in return, for a consideration. In the case of the Bor. of Milford v. Milford Water Co., 23 W. N. C. 413, Chief Justice PAXSON holds that neither councils, nor officers of a municipality, can contract in any other way than by ordinance; and that is one of the safeguards of municipal corporations, that they can only be bound by a contract authorized by an ordinance duly passed. This view, we think, is fully sustained by a number of adjudications: Larimer & L. St. Ry. Co. v. Railway Co., 137 Pa. 533; Harrisburg City Pass. R. R. Co. v. Harrisburg, 7 Pa. C. C. Rep., 584 and 593; Butler et al. v. School Dist., etc., 149 Pa. 351.

"[The defendant, having to obtain the legal consent of the borough authorities to enter upon their streets and highways for the purpose of constructing and maintaining its electric railway over and upon them, the first question above suggested

recurs: Have the plaintiffs the right to invoke the present procedure and enjoin the defendants from entry on the streets for railway purposes?

" The defendant admits that the Lehigh Coal and Navigation Company, one of the plaintiffs, is the owner of land abutting on Market, Railroad, Oak, Hazzard and White streets, on the line laid out by the ordinance of the defendant's railway. This plaintiff still owns the fee to the middle of the streets subject to the right of passage of the public, and he may use the land for his own purposes in any way not inconsistent with the public easement. Where the injury complained of is one of a continuing and permanent nature and special to complainants, for which an action at law would not afford a complete and adequate remedy, a plaintiff may challenge the rights of a corporation claiming to do the injury in a court of equity, under the act of 19th June, 1871, P. L. 1360, and by injunction prevent and restrain the wrong:] [5] Penna. R. R.Co.'s Appeal, 115 Pa. 514; Sterling's Appeal, 111 Pa. 35; Potts v. Quaker City Elevator R. R. Co., 12 Pa. C. C. R. Rep. 593; Larimer Ry. Co. v. Railway Co., supra: Philadelphia & Reading R. R. Co. v. Kensington and Tacony R. R. Co., 33 W. N. C. 182; Edgewood R. R. Co.'s Appeal, 79 Pa. 257; Steelton Borough v. East Harrisburg Ry. Co., supra; Minnig et al. v. N. Y., Chicago and St. Louis R. R. Co., 11 W. N. C. 297; Germantown Pass. Ry. Co. v. Citizens' Pass. Ry. Co., 151 Pa. 138; Westhaeffer v. Lebanon and Annville St. Ry. Co., 35 W. N. C. 33; Harrisburg and Mechanicsburg Electric Ry. Co. v. Harrisburg, Carlisle and Chambersburg Turnpike Co., 15 C. C. Rep. 389.

" [Nor can we sustain the objection that the burgess has no right to this form of action. He is the executive officer of the borough; to him belongs the right to enforce the laws and ordinances. If there is an occupation of the streets without authority of law, there is a nuisance, and, to abate the nuisance, he may invoke the equitable powers of the court.] [6]

" And now January 7, 1895, for the reasons given, the motion to dissolve the preliminary injunction is refused, and it is adjudged and decreed that the said defendant, its officers, agents, contractors and employees, be restrained by injunction to issue forthwith, from constructing, maintaining, or operating an electric street railway on or over the streets and highways of the

borough of Summit Hill, in said county, and from entering upon or further interfering with the said streets and highways for said purpose." [1]

*Errors assigned* were, (1) decree as above, quoting it; (2–6) portions of opinion as above, quoting them.

*James Ryon* and *L. W. Barringer, J. O. Ulrich, James Ryon* and *A. H. O'Brien* with them, for appellant.—The complainants have no standing in court: Rafferty v. Central Traction Co., 147 Pa. 579; Sterling's App., 111 Pa. 35; Lockhart v. Ry., 139 Pa. 419.

There is a palpable distinction between street railways and railroads operated by steam in this respect. Street railways are not additional burdens upon streets, and abutting owners are not entitled to compensation therefor: Lockhart v. Ry., 139 Pa. 419; Chester Co. v. Brower, 117 Pa. 647; Penna. R. R. v. Duncan, 111 Pa. 352; Elliott on Roads and Streets, 528.

The complainants have no common interest, and the defendant should not be compelled to litigate with two complaints with no common interest.

We suppose the name of the burgess was used in this complaint because the borough of Summit would not permit the borough's name to be used. It will not be said that the burgess as such has suffered any damage by reason of the acts of the defendant.

A party cannot vindicate others' rights by process in his own name, nor employ civic process to punish wrongs to the public: Sparhawk v. Union Pass. Ry., 54 Pa. 401; R. R. v. Stump, 8 G. & J. 479; R. R. v. Brudden, 20 N. J. Eq. 530; Canal Co. v. Graham, 63 Pa. 290; Rafferty v. Central Traction Co., 147 Pa. 579; Larimer Ry. v. Ry., 137 Pa. 547; Rhodes v. Dunbar, 57 Pa. 274.

A court of equity will not enjoin the obstruction of a public street at the suit of a private citizen who shows no special damages: Cox's App., 10 W. N. C. 552; Cox's App., 11 W. N. C. 571; Union St. Elec. Ry., 154 Pa. 422.

Reading the whole of Burgess McMichael's evidence, it nowhere appears that he had not sufficient time to examine the ordinance that evening before the meeting of the council, in order to approve or disapprove of it.

The language is very plain that the burgess shall return it, if he shall not approve, to council, at the next regular meeting thereof. There is no contradiction in the evidence, and the court has found that the next regular meeting of council was November 2, at 7.30 P. M. The burgess did not return the ordinance to the next regular meeting, with his objections, and it therefore became a law under the plain language of the statute: Act of May 23, 1874, P. L. 246; Com. v. Fitler, 26 W. N. C. 369; Penna. Globe Gas Light Co. v. Scranton, 97 Pa. 538.

The provision that the burgess shall return the ordinance to the next regular meeting of the borough council is mandatory, because the grant of such a veto power is construed strictly: Opinion of Justices, 3 Mass. 567; Opinion of Justices, 45 N. H. 607; Harpending v. Haight, 39 Cal. 189; Burlington v. Dennison, 42 N. J. 165; Phila. v. Given, 60 Pa. 136; Blanchard v. Bissell, 11 Ohio, 197.

A grant of authority must be strictly followed in the mode of its exercise: Zottman v. San Francisco, 20 Cal. 96; Keese v. Denver, 10 Colo. 113; Head v. Ins. Co., 2 Cranch, 127; Fuller v. City of Scranton, 18 W. N. C. 18, 20; Bloom v. Xenia, 32 Ohio, 461; Danville v. Shelton, 76 Va. 325; Jones v. Hutchinson, 43 Ala. 721; State v. Deal, 24 Fla. 293.

*Fergus G. Farquhar, Loose & Craig* and *John W. Ryon* with him, for appellee.—Neither council nor the officers of the municipality can contract in any other way than by ordinance; that this is one of the safeguards of municipal corporations and that they can only be bound by contract authorized by an ordinance duly passed: Larimer Ry. v. Ry. Co., 137 Pa. 533; Harrisburg City Pass. Ry. v. Harrisburg, 7 Pa. C. C. R. 584; Butler v. School District, 149 Pa. 351; Borough of Milford v. Milford Water Co., 23 W. N. C. 413.

There is no difference between the requisites of a valid municipal resolution and an ordinance, as the act of assembly requires both resolution and ordinance to pass under the supervision of the burgess before they become effective: Kepner v. Com., 40 Pa. 124.

Where the injury complained of is one of a continuing and a permanent nature and special to complainants, for which an action at law would not afford a complete and adequate remedy,

a plaintiff may challenge the rights of a corporation, claiming to do the injury, in a court of equity under the act of June 19, 1871, P. L. 1360, and by injunction prevent and restrain the wrong: Wirth v. City Pass. Ry. Co., 2 W. N. C. 650; Penna. R. R. Co.'s Appeal, 115 Pa. 514; Sterling's Appeal, 111 Pa. 35; Potts v. Quaker City Elevated R. R. Co., 161 Pa. 396; Larimer Ry. Co. v. Railway Co., 137 Pa. 547; Edgewood R. R. Co.'s Appeal, 79 Pa. 257; Minnig et. al. v. N. Y., Chicago & St Louis R. R. Co., 11 W. N. C. 297; Germantown Pass. Ry. Co. v. Citizens Pass. Ry. Co., 151 Pa. 138; Westhaeffer v. Lebanon & Annville St. Ry. Co., 35 W. N. C. 33; Harrisburg & Mechanicsburg Electric Ry. Co. v Harrisburg, Carlisle & Chambersburg Turnpike Co., 15 C. C. R. 389.

OPINION BY MR. JUSTICE WILLIAMS, March 25, 1895:

The assignments of error in this case present two questions not involved in any other one of the series of appeals with which this one is connected.

The first of these relates to the validity of the ordinance of the borough of Summit Hill under which the defendant claims to have secured municipal consent to the occupation of certain streets with its street railway. The evidence shows that an outline or draft of such an ordinance as was thought to be necessary had been prepared by the borough solicitor and presented or reported to the councils at a meeting held on the fifth day of October, 1894. One or two alterations were made in it by councils and then it was formally accepted as appears by an entry on the minutes made thus: " On motion the ordinance be accepted." This was probably intended as an expression of satisfaction with the character of the work done by the solicitor in the preparation of an ordinance suitable for consideration and adoption at the proper time. Another meeting of councils was held on the tenth day of the same month which adjourned to meet at the call of the president. Six days later a call was made by the president and a meeting held at the house of one of the councilmen. At this meeting the ordinance was taken up and adopted, giving to the defendant permission to enter upon and occupy certain borough streets with its street railway. When this was done another adjournment was made to the call of the president. This call came on the

following day and at that meeting the business done was the approval of a contract and bond given by the defendant company under the provisions of the ordinance adopted the day before. The next meeting of councils was the regular monthly meeting held on the second day of November. The hour for this meeting was seven and a half o'clock in the evening. On the same evening at about six o'clock the ordinance, the agreement of the railway, the bond, and other accompanying papers came to the hands of the burgess for his examination and action. His veto was not presented to councils when that body met, and at its adjournment it was alleged that the ordinance had become effective under the provisions of the act of 1893. The burgess completed his examination and sent his veto on the following day, and his veto message with a statement of his objections to the ordinance came in this manner to the notice of councils and of the defendant. Was this veto in time under the circumstances of this case? The burgess insisted that it was, and, as the defendant admits, protested against the validity of the ordinance and the right of the railway to occupy the streets under it. It may well admit of doubt whether an ordinance adopted at a called meeting is within the meaning of that provision of the act of 1893, that requires the burgess to return an ordinance to which he objects at the next regular meeting of councils. It would seem that an ordinance passed at one regular meeting should be promptly placed in the hands of the burgess who would then have until "the next regular meeting" for examination and decision. If an ordinance passed at a called meeting is to be treated in the same manner as though passed at a regular meeting, then the called meeting might be held on the same evening with the regular one at an hour, or a half hour earlier, and an ordinance upon an important subject and of great length be passed. It could then be placed, as this one was, in the hands of the burgess at a time to make examination impossible, and if the object was to avoid a veto the shorter the interval between the special and the regular sessions, and the more prompt the adjournment of the regular, the better the prospect of securing an ordinance in defiance of the burgess. This is an opening for discord and uncertainty and litigation that the law did not contemplate. The court below took the most favorable view possible of the

situation for the councils, and the defendant, when it held that the burgess was at least entitled to a reasonable time for examination. That he was not allowed, by the council, a reasonable time in this instance and that his veto promptly returned within twenty-four hours after the papers were placed in his hands was in time, were conclusions that followed logically, and we see no reason for disturbing them.

The second question relates to the right of the burgess to raise the question of the validity of the ordinance. This is hardly debatable. The statute confers on him the veto power. The councils arrange to render its exercise practically impossible, and assert that they have a valid ordinance without his signature. He has a right to assert his prerogative, and he can do this only by denying the validity of the ordinance alleged to be binding notwithstanding his veto. The appropriate remedy for him is by bill in equity to restrain action under the ordinance alleged on one side to be legal and on the other to be without legal force. This brings his prerogative and the manner of its exercise before the court and determines the duty of the councils towards him. The joinder of the other plaintiff has not been demurred to, and the decree may well rest on the right of the burgess to be heard on the validity of the ordinance. The decree is affirmed. The costs of the appeal to be paid by the appellant.