LAWRENCE A. MCCARTHY *vs.* VINCENT J. MCALOON,
CITY TREASURER OF THE CITY OF PAWTUCKET, *et al.*

AUGUST 13, 1951.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CONDON, J. This is a bill in equity to enjoin the enforcement of an alleged invalid joint resolution of the city council of Pawtucket which authorizes the chairman of its joint standing committee on finance to approve the borrowing of $4,000,000 in anticipation of taxes. Pending a hearing of the cause on the merits the superior court entered a decree temporarily enjoining said chairman and the two other respondents, the city treasurer and the city, from performing any acts whatsoever under the authority of the resolution. From that decree respondents have appealed to this court.

The appeal is based upon respondents' contention that the trial justice erred in deciding that the joint resolution violated public laws 1885, chapter 474, otherwise known as the charter of the city of Pawtucket. Complainant, who has brought suit in his official capacity as mayor of the city and also in the capacity of a taxpayer, contends that the city council was without authority to confer upon the chairman of its joint standing committee on finance the power described in the resolution. He bases that contention substantially on the ground that such power is a portion of the executive power which the charter vests solely in the office of mayor.

The issue thus raised between the parties was the only

one tried in the superior court and originally briefed and argued to us. However, at the hearing in this court one of the justices raised the question whether the superior court *sitting in equity* had jurisdiction to hear and determine the controversy between the parties. Thereupon the parties obtained leave of court to file further briefs on that question. Such briefs were duly filed and it appears therefrom that both sides are in agreement that the superior court had such jurisdiction. However, after examining the bill and the evidence adduced at the hearing on the prayer for a preliminary injunction, we are of the opinion that the superior court sitting in equity had no jurisdiction to hear and determine the question whether the joint resolution was valid, or to enjoin the respondents from performing their official duties in accordance with such resolution.

The bill of complaint alleges in substance that the city council is without authority to confer any power upon the chairman of the joint standing committee on finance to approve the borrowing of money in anticipation of taxes. It also alleges that complainant as a taxpayer will suffer irreparable injury if respondents act under that power; that he is without an adequate remedy at law to prevent such injury; and that equity should act to prevent a multiplicity of suits. Complainant, however, does not therein aver in what way such injury will necessarily result nor does he aver that he will suffer any particular loss of property. The essence of his bill appears to be that he, as mayor, is being unlawfully deprived of some of the power of his office and that such deprivation is a public wrong which, at his suit, equity should redress. Incidental thereto it is alleged generally that as a taxpayer he and other taxpayers will indirectly and in some indefinite way suffer injury.

The evidence shows that the city council on June 30, 1950 passed a joint resolution authorizing the borrowing with the approval of the mayor, of $3,000,000 in anticipation of taxes during the city's fiscal year. Before the expiration

of that year complainant was elected mayor and a new city council was elected. After the newly elected government took office in January 1951 friction developed between the mayor and the city council. On March 14, 1951 the city council adopted the following resolution:

"Resolved, Section 1. The resolution passed June 30, 1950 authorizing the borrowing of money in anticipation of taxes is hereby amended (a) by striking out the words and figures 'Three Million ($3,000,000) Dollars' and inserting in lieu thereof the words and figures 'Four Million ($4,000,000) Dollars' and (b) by inserting after the words 'with the approval of the Mayor' the words 'or of the Chairman of the Joint Standing Committee on Finance'.

"Section 2. This resolution shall take effect upon its passage."

The mayor vetoed the resolution and on April 2, 1951 the city council duly passed it over his veto. Promptly thereafter the mayor filed the instant bill of complaint in the superior court. On April 24, 1951 that court entered the decree appealed from.

The complainant relies largely upon public laws 1885, chap. 474, sec. 2, for his claim that the power which the city council attempted to confer upon the chairman belongs exclusively to the mayor. That section reads:

"The administration of all the fiscal, prudential and municipal affairs of said city, with the government thereof, except as hereinafter specially provided, shall be vested in one officer to be called the mayor, a council of five aldermen, to be called the board of aldermen, and a council of fifteen persons, to be called the common council, and which board of aldermen and common council together shall be called the city council. No elector shall be eligible to membership in either branch of the city council unless he is qualified to vote upon a proposition to impose a tax and for the expenditure of money in said town."

On the basis of such allegations and evidence pertaining to the powers of the mayor under the charter, complainant

rested his case for equitable relief as a taxpayer suing on behalf of all the taxpayers. In our opinion neither the bill nor the evidence discloses a proper case. A taxpayers' bill of complaint seeking to enjoin enforcement of an alleged illegal statute or ordinance should aver a threatened specific injury to some property right of the taxpayer which is not remote or merely contingent. It should appear that such property right will be immediately, adversely and substantially affected by the alleged invalid law. *C. Tisdall Co.* v. *Board of Aldermen,* 57 R. I. 96. Or as was said in *Fletcher* v. *City of Paris,* 377 Ill. 89, 95, complainant must not only set out the invalidity of the law but also "that he has sustained, or is in immediate danger of sustaining, some direct injury as the result of its enforcement and not merely that he suffers in some indefinite way in common with people generally." In the absence of such a showing, equity is without power to revise, control or correct a public, political or executive officer in the exercise of his office. "It never does so at the suit of a private person, except as incidental and subsidiary to the protection of some private right, or the prevention of some private wrong, and then only when the case falls within some acknowledged and well defined head of equity jurisprudence." *Judd* v. *Town of Fox Lake,* 28 Wis. 583, 587.

A good statement of the requisites of such a bill is to be found in 1 Spelling on Injunctions (2d ed.) §693, p. 580. It is stated there that "The injury which will justify relief must be immediately impending and of such a character as ordinarily warrants interference. An allegation amounting only to a speculative opinion as to the consequences of enforcing a void ordinance is not sufficient. The injury must be specified and so pointed out that the court can see that it will be an inevitable consequence of the act threatened and complained of." In other words, it is well established that the gravamen of such a bill must be that the enforcement of the challenged ordinance would unlawfully increase the

taxpayer's burden of taxation or otherwise cause specific injury to his property. 2 McQuillin Municipal Corporations (2d ed.) §848, §851, p. 1064.

The instant bill falls far short of meeting the above requirements. On the contrary it appears to raise nothing but a purely political question. The word "political" is here used not in its narrow sense of "partisan" but in its true sense as that which pertains to government. Political questions involve political rights as distinguished from civil, personal or property rights. A political right is a right exercisable in the administration of government and involves power to participate directly or indirectly in its management. *Fletcher* v. *Tuttle*, 151 Ill. 41. In jurisdictions having distinct courts of law and equity it is generally recognized that equity is without jurisdiction to decide purely political questions. *Joughin* v. *Parks*, 107 Fla. 833; *Truesdale* v. *City of Columbia*, 203 S. C. 333; *Jackson* v. *Cosby*, 179 Md. 671; *Morley* v. *Police Commissioner of Boston*, 261 Mass. 269; *Fletcher* v. *City of Paris, supra.* 19 Am. Jur., Equity, §§142, 143, 144. Such is definitely the law in this state. *Boss* v. *Sprague*, 53 R. I. 1. See also *Dupre* v. *Doris*, 68 R. I. 67.

The instant bill although containing a general allegation of injury to complainant's rights as a taxpayer is one to all intents and purposes exclusively for the protection of an alleged charter right vested in him as the mayor to participate in the management of the fiscal affairs of the government of the city of Pawtucket to the extent of approving borrowings of money in anticipation of taxes. Indeed the complainant in his brief appears to concede that such is the case. He expressly states therein that "The only issue in controversy is whether the powers granted to the Mayor under Chapter 474 of the Public Laws of 1885, commonly referred to as the City Charter of the City of Pawtucket, are taken from him by the joint resolution * * *." And respondents in their brief agree as follows: "The sole issue involved here is whether or not said joint resolution is

illegal and null and void on the ground that it deprives the Mayor of powers granted by State law. It raises a question of law on undisputed facts."

In their memorandum briefs the parties concede that a purely political question is not cognizable in a court of equity in this state but claim that the instant suit is very much like certain taxpayers' suits which were entertained without question in the following instances involving alleged void acts of municipal bodies: *Fisk* v. *Hazard,* 7 R. I. 438; *Sherman* v. *Carr,* 8 R. I. 431; *Lewis* v. *City of Providence,* 10 R. I. 97; *Place* v. *City of Providence,* 12 R. I. 1; *Austin* v. *Coggeshall,* 12 R. I. 329; *Smith* v. *Town of Westerly,* 19 R. I. 437; *McTwiggan* v. *Hunter,* 19 R. I. 265; *Ecroyd* v. *Coggeshall,* 21 R. I. 1; *Murphy* v. *Duffy,* 46 R. I. 210. In each of those cases, however, it was clear that a substantial property right in the taxpayers was necessarily involved and that it was not merely incidental to a political question but was the primary issue. Further in all but one of the cases an alleged illegal *expenditure* of public money was threatened and that case concerned an alleged void *assessment* of a tax.

Here it does not appear either from the bill or the evidence that the taxpayers will suffer any injury to property rights or direct loss through an increase in the burden of taxation merely because the chairman of the joint standing committee on finance instead of the mayor may approve borrowings under the resolution. Whether the mayor or the chairman approves such borrowings the obligation of the city will be the same. To permit the resolution to operate can in no way result in increasing the burden of the taxpayers. Unlike the situations in the cases above cited there is no threatened unlawful *expenditure* of public funds or *illegal* assessment of taxes tending to cause irreparable injury to property rights of the taxpayers. On the contrary the enforcement of the statute here will result merely in the receipt of funds the borrowing of which the city council has authorized. In that respect the validity of the resolution

is not questioned. Therefore, in the absence of a showing of any real, substantial property loss to the taxpayers this cause is in reality one solely of a political controversy between different departments of the city government concerning the management of the fiscal affairs of the city.

The complainant, however, argues further that as mayor he is entitled to invoke the aid of equity to prevent the city council from unlawfully vesting a portion of the power of his office in another. The theory of his position in this respect appears to be that such action by the city council is a violation of the right of the people of the city to have the executive power exercised solely in accordance with the charter and that such a public wrong properly can and should be prevented by injunction at the suit of the mayor. He cites two cases from Missouri and Pennsylvania but none in this court to support his position. *Francis* v. *Blair*, 89 Mo. 291; *Lehigh Coal & Navigation Co.* v. *Inter-County Street Ry.*, 167 Pa. 126. We make no comment on those cases except to say that, assuming they support complainant's position, they are nevertheless not authority here.

In this state it was long ago settled that "Suits for the public should be placed in public and responsible hands." *O'Brien* v. *Board of Aldermen*, 18 R. I. 113, 116. The public officer vested with that authority is the attorney general of the state. Only he may sue to redress a purely public wrong except in those instances where one of the public who is injured has a distinct personal legal interest different from that of the public at large, as where a public office is being withheld from the rightful incumbent thereof. In such a case the claimant of the office may petition this court in his own name for the proper prerogative writ. *McGroarty* v. *Ferretti*, 56 R. I. 152; *Black* v. *Cummings*, 62 R. I. 361. And where an injunction appeared to be necessary we have exercised our exclusive jurisdiction and issued a prerogative writ of injunction. *Carpenter* v. *Sprague*, 45 R. I. 29.

We have found no case where this court has ever approved

the bringing of a *suit in equity* by a mayor to prevent a purely public wrong affecting the prerogatives of his office, and we are satisfied that there is no authority in this state for such a procedure. For this reason it was error for the superior court sitting in equity to entertain the instant cause. The injunction which it issued is, therefore, null and void.

The respondents' appeal is sustained, the decree appealed from is reversed, and the cause is remanded to the superior court with direction to vacate its injunction and to dismiss the bill for lack of jurisdiction.

*John A. O'Neill*, for complainant.

*J. Frederick Murphy*, City Solicitor, *Raymond F. Henderson*, for respondents.