WILLIAM E. POWERS, *Atty. Gen. vs.*
CITY OF PAWTUCKET *et al.*

MARCH 19, 1952:

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

230

FLYNN, C. J. This is a petition for a "Prerogative Writ Of Injunction." It is brought by the attorney general on behalf of the state of Rhode Island and prays that the city of Pawtucket, a municipal corporation, and certain named officials in their capacities respectively as mayor, city treasurer and chairman of the joint standing committee on finance of the city council of that city, be enjoined from performing any acts whatsoever under a certain joint resolution of the city council, which resolution is alleged to violate the provisions of the city's charter.

No objection, jurisdictionally or otherwise, has been raised by any of the respondents to the form or substance of the petition. Indeed all respondents, individually or through their attorneys, have signed and filed a stipulation of agreed facts and apparently join in the prayer of the petition for a determination of the validity of the joint resolution, hereinafter set forth, which purported to authorize said city to borrow moneys on temporary loans for current expenses in anticipation of taxes during the fiscal year beginning July 1, 1951.

The following facts appearing from the stipulation and petition will aid in understanding the issue. The city of Pawtucket, one of the respondents, is a municipal corporation created by the general assembly of the state of Rhode Island and derives its authority generally to function as such by virtue of chapter 474 enacted on March 27, 1885, as amended by public laws 1902, chap. 1018, hereinafter referred to as the charter.

Section 2 of the charter, as amended, provides for the administration of all fiscal and municipal affairs and reads in part as follows:

"The administration of all the fiscal, prudential and municipal affairs of said city, with the government thereof, except as hereinafter specially provided, shall be vested in one officer to be called the mayor, a council

of *six aldermen,* to be called the board of aldermen, and a council of *eighteen* persons, to be called the common council, and which board of aldermen and common council together shall be called the city council."

Section 3, clause 1, of the charter deals with the mayor's duties and responsibilities, and the pertinent part thereof provides:

"The mayor shall be the chief executive officer of the city, and by virtue of his office a justice of the peace therein; he shall be vigilant and active in causing the laws of the state and the ordinances of the city to be executed and enforced; * * * and he shall have a general supervision of the subordinate officers of the city, and shall cause all neglect or violation of duty by them to be punished."

On July 25, 1951 the joint resolution in question was originally passed by the board of aldermen. The pertinent part of that resolution reads as follows:

"Section 1. The City Treasurer hereby is authorized, with the approval of the Mayor or of the Chairman of the Joint Standing Committee on Finance, to borrow from time to time during the current municipal fiscal year beginning July 1, 1951, moneys for the purpose of meeting the current expenses of the city on temporary loans and in anticipation of taxes of said municipal fiscal year, and to give for such loans the notes of the city, payable within one year from their dates. The amount of such notes at any time outstanding shall not exceed the sum of Three Million ($3,000,000.00) Dollars nor the balance of uncollected taxes plus the collected taxes on hand and expressly reserved to meet such notes."

That resolution was passed in concurrent action by the common council on July 27, 1951 and was duly presented to the mayor who did not approve or sign it but returned it to the board of aldermen with a veto message containing his objections. Thereafter it was duly passed over the mayor's veto, first by the board of aldermen and then in concurrent action by the common council, by vote of a two-

thirds majority of the elected members in each of said branches in accordance with the express provisions of section 3, clause 6, of the charter.

Thereupon Lawrence A. McCarthy individually as a taxpayer and also in his capacity as mayor of the city brought a suit in equity in the superior court to enjoin the chairman of the joint standing committee on finance, the city treasurer, and other officials from exercising any public authority purportedly vested in them by virtue of said joint resolution. The ground therein alleged was in substance that the resolution violated the provisions of section 2 of the charter, deprived the mayor of his exclusive authority under the charter to approve such borrowings, and also invaded or prevented the performance of his duties and responsibilities in other respects as imposed by other provisions of the charter. After a hearing a decree of the superior court was entered in that case granting the prayers of the bill for injunctive relief. The cause was later brought to this court on an appeal from that decree by the city and other respondents. *McCarthy* v. *McAloon*, 79 R. I. 55.

In that cause this court held in substance that the superior court sitting in equity had no jurisdiction to entertain a bill brought by the complainant merely in his capacity as mayor to vindicate a public right, because the attorney general of the state of Rhode Island alone could act in that capacity. We further held that as an individual taxpayer the complainant could not obtain such relief unless he alleged and proved a special injury to some right of property or other interest different from the common effect of the alleged actions upon other citizens generally. These elements being absent the decree was reversed. *McCarthy* v. *McAloon, supra.* However, neither the validity of the resolution itself nor the scope of the alleged duties and obligations of the mayor under the various sections of the charter as therein set forth were considered or decided in that opinion.

Subsequently the state of Rhode Island, acting through

its attorney general and on behalf of the public generally, brought in this court the instant petition for a so-called "Prerogative Writ Of Injunction" to restrain respondents as previously stated.

The petition alleges that pursuant to such resolution the respondents are threatening illegally to borrow on behalf of the city and to issue its corresponding notes of indebtedness in anticipation of taxes to the amount of $3,000,000 or a substantial portion thereof; and that the resolution violates section 2 of the charter in that it purports to divest the mayor and to deprive him of the exclusive power granted to him under section 2 of the charter to administer the fiscal, prudential and municipal affairs of the city in conjunction with the city council and purports to grant such power and authority also to the chairman of the joint standing committee on finance of the city council who is nowhere authorized to act in that respect under the charter.

The petition further alleges that the resolution violates clause 1 of section 3 of the charter in that it purports to divest the mayor of exclusive power and authority, granted to him by that clause and section, of being vigilant and active in causing the laws of the state and ordinances of the city to be executed and enforced, and purports to delegate such power and authority also to the chairman of the joint standing committee on finance of said city council; and in the further respect that it divests and deprives the mayor of the exclusive authority vested in him as to general supervision of subordinate officers and in causing the neglect or violation of duty by them to be punished, and purports to delegate such power and authority also to the chairman of the joint standing committee on finance of the city council.

The respondent mayor, apparently being satisfied with the contention of the state in its petition and argument, has filed no brief nor has he argued the case specially. On the other hand the city and certain of the individual re-

spondents, including the chairman of the joint standing committee on finance, hereinafter called the chairman, are represented by the city solicitor who has filed a brief and argued vigorously for the validity of the joint resolution and against the granting of the prayer of the petition for injunctive relief.

The petitioner contends substantially that section 2 of the charter expressly sets up for the city of Pawtucket two distinct and coordinate departments of municipal government, the mayor being expressly made the chief executive of the city and the city council, comprised of the board of aldermen and the common council, being vested with the legislative functions thereof; that because of sections 2 and 3 the city council does not have the authority to administer the fiscal affairs of the city to the exclusion of the mayor any more than the mayor has the right to administer the fiscal affairs of the city to the exclusion of the city council; that the mayor and the city council must operate concurrently in accordance with the intent expressly stated in the charter in order validly to make particular borrowings from time to time; and that this intention is fortified by other language in the charter, particularly in section 3, clause 1, whereby certain duties and responsibilities are imposed upon the mayor to exercise vigilance and to supervise the actions of inferior officers, which obligations could not be performed effectively unless he participates actively in the full administration of the fiscal affairs of the city. It is claimed that the legislature must have intended by such express language to give the mayor some real powers where it imposed such important responsibilities and that certainly it did not intend merely to use wasteful words. In support of these contentions generally the state has cited several cases from other jurisdictions as bearing some analogy to certain phases of the question involved.

On the other hand the city solicitor, representing all the respondents excepting the mayor, contends generally that those cases from other jurisdictions involve plain attempts

by the council to delegate powers in violation of some express terms of an existing charter, law or ordinance, and are therefore distinguishable from the instant case; that under the instant charter the mayor never had such exclusive powers as alleged in the petition and argument of the attorney general because section 2 merely describes a general form of government and confers no particular powers or jurisdiction; that other sections, particularly clause 6 of section 3, provide for the extent of participation by the mayor in such authorizations and that these powers were exhausted when the joint resolution was passed over the mayor's veto; and that in any event the charter nowhere provides specifically for the city's borrowing in anticipation of taxes but that such authority is derived solely from G. L. 1938, chap. 329, as amended by P. L. 1951, chap. 2771, permitting any city or town of the state to make such borrowings by enacting a resolution like the one in question here.

In our judgment the prayer of the petition should be denied. Whatever force the petitioner's contentions might have if the issue were determinable solely from the charter, they do not meet the precise problem presented by this petition. The underlying question raised here is not governed by the charter alone, as petitioner alleges, but is to be determined by a different and later statute.

Neither of the sections of the charter relied on by petitioner nor any other provision therein so far as we have discovered grants authority to the city to borrow in anticipation of taxes and to issue notes of indebtedness therefor. Apparently such authority was granted to cities and towns generally for the first time by P. L. 1930, chap. 1617, which among other provisions added two new sections, 29 and 30, to the then existing G. L. 1923, chap. 47. These two sections, with a certain amendment provided by P. L. 1932, chap. 1944, appear as G. L. 1938, chap. 329, §§26 and 27. Subsequently said section 26 was further amended by P. L. 1951, chap. 2771, and now reads in part as follows:

"Any city or town may hire in each financial year in anticipation of the receipt of the proceeds of the annual tax due or to become due in said financial year upon the ratable property within said city or town an amount which, together with any money borrowed in anticipation of taxes in any prior year which may remain unpaid, shall not exceed in the aggregate the total tax levy of the then current financial year, or which if no tax levy shall have then been made, shall not exceed the tax levy of the next preceding financial year, the money so hired to be used and expended for the payment of the current liabilities and expenses of said city or town, and may issue its negotiable notes therefor. Notes issued under authority of this section shall bear upon their face the notation 'issued in anticipation of taxes assessed as of December 31, 19 — ' and shall be made payable not later than one year from their date, but may be renewed or paid by the issue of new notes bearing such notation and payable not later than one year from the date of the original notes so renewed or paid. The outstanding notes of any city or town issued prior to the passage hereof in anticipation of taxes of the then current year are hereby validated to the same extent as if said notes had been expressly authorized by act of the general assembly before their issue, and are hereby declared to be valid and binding obligations of such city or town. Every city and town hiring money under the provisions of this section shall assess and levy a tax in each financial year sufficient to provide funds for payment of all outstanding notes theretofore issued in anticipation of taxes of the preceding financial year."

General laws 1938, chap. 329, §27, remains substantially the same as previously and provides:

"A city or town which has authorized the hiring of money under the provisions of § 25 or 26 of this chapter may sell the notes or other evidences of the indebtedness so authorized at public or private sale, or may use the same in payment of its debts. In case of sale at discount the discount shall be treated as interest paid in advance. In the case of any hiring under § 25

of this chapter for a period longer than one year, provision shall be made in the vote or resolution authorizing such hiring for payment thereof by such annual payments as will extinguish the same at maturity, the first of such annual payments to be made not later than one year after the date of the original borrowing. The denomination, maturity, interest rate, method of sale and other terms, conditions, and details of any note or hiring under the provisions of this chapter may be fixed by the vote or resolution authorizing the same, or if no provision therefor is made in said vote or resolution, by the town or city council, or in absence of any of the foregoing, by the treasurer or other officer authorized to issue said notes or to hire said money."

By virtue of those sections any city or town is now authorized to borrow money annually in anticipation of taxes for current expenses upon fulfilling certain limitations or conditions as therein expressed. Without such provisions the respondent city could not legally have borrowed in anticipation of taxes and issued the city's notes therefor. It seems clear that if the city had such authority under its charter, it would not have been necessary for the legislature to specifically authorize such borrowings in the later statute and thereby to also validate certain outstanding notes which had been previously issued without adequate authority for such type of loans.

It also should be noted that in these two sections of the enabling statute neither the mayor nor the chairman of the joint standing committee on finance is mentioned as such. Nor is either of them given therein any specific duty or authority in connection with such borrowings and the issuance of notes therefor. Further it is significant that the city council and the issuing officer, in this case the treasurer, are the only officials who are given specific authority to hire money for such purpose and to complete the transaction. Nowhere does it appear expressly or by necessary implication that such borrowings and issuing of

notes therefor must be submitted to the exclusive or ultimate judgment of the mayor or chairman. Again it is clear that apart from the limitations generally expressed as to the authorization, total amount, use, identification, and period covered as they appear in section 26, the remaining essential details of any such loan and note or notes are prescribed by section 27. Therein such details as denomination, maturity, interest rate, method of sale and other terms, conditions, and details of a note or hiring may be fixed in any one of three alternative ways, that is: "by the vote or resolution authorizing 'the same"; "*or* if no provision therefor is made in said vote or resolution, [then] by the town or city council" in a later vote; "*or* in absence of any of the foregoing, by the treasurer or other officer authorized to issue said notes or to hire said money." (italics ours)

The language of these sections is clear and unequivocal. Conceivably in certain circumstances it vests a broad power in the issuing officer without setting up a standard or rule of general restrictions and without requiring approval by the mayor, or the chairman, or after authorization by the city council itself. Whether or not such a provision is a wise exercise of power is not a question for judicial interpretation. The wisdom and policy to be followed in such matters are for the legislature to determine and we are bound by the enactment if, as here, the language is clear and the statute itself is not otherwise challenged.

An examination of these two sections shows that the city in the first instance derives from this statute rather than the charter all its authority to borrow temporarily in anticipation of taxes for current expenses and to issue its notes of indebtedness therefor; that the legislature by its plain language did not then vest in the mayor or chairman the ultimate power to approve or disapprove the actions of the council and treasurer in this respect; and that it expressly and clearly vested directly in the city council the power to authorize the hiring of money in anticipation of taxes and in the treasurer as the issuing officer

the authority to consummate such loans by issuing notes therefor subject, however, to the limitations or conditions expressed in §§ 26 and 27 of chapter 329 as amended.

The question therefore is whether the resolution in question complies with the express terms of the governing statute. Apparently if the resolution authorizing such a loan had been duly passed by the city council over the mayor's veto and had authorized the city treasurer alone to fill in such essential details as are specified in the statute and as were omitted from the vote of the city council, there would have been literal compliance with the provisions of the controlling statute.

The only question then is whether such resolution becomes illegal solely by virtue of the words "with the approval of the Mayor or of the Chairman of the Joint Standing Committee on Finance" which appear therein to qualify the city treasurer's authority to issue notes for the purposes in question. If such an "approval" by the mayor or chairman is interpreted to vest in either the mayor or the chairman the exclusive or ultimate discretion to ratify or to nullify all or part of such borrowings as the treasurer might propose from time to time by virtue of this statute and resolution, conceivably a serious legal question of delegation of legislative authority might arise. On the other hand if those words are not interpreted as vesting such discretionary authority in the mayor or chairman but merely contemplate substantially a ministerial act to officially evidence the fact that the borrowing and the issuing of notes had been duly authorized in accordance with the power granted by this statute, then no such difficulty would arise.

In the circumstances, where one interpretation of a legislative enactment would raise serious questions as to its legality and another would make it conform to the authority clearly expressed in the enabling act, courts usually follow the latter construction, thus giving legal effect thereto

rather than to invalidate it entirely. See *Taft* v. *Zoning Board of Review,* 75 R. I. 117, 121, and *Allen* v. *R. I. State Board of Veterinarians,* 72 R. I. 372, 379. If we apply that generally-accepted rule to the facts here, we should not read into the resolution, unless required to do so by its context, a meaning that would make it possible to nullify the act of the city council and treasurer as violative of the clear authority given to them in the statute. Therefore we construe the added words "with the approval of the Mayor or of the Chairman of the Joint Standing Committee on Finance" as contemplating merely a ministerial act by the mayor or chairman, such as attesting or countersigning notes to evidence officially the fact that they are duly issued in accordance with a proper vote of the city council.

In our judgment, therefore, the petitioner's contentions misconceive the law that is applicable to the circumstances of this case in that the provisions of the charter are not the controlling law. We consider general laws 1938, chapter 329, §§26 and 27, as amended, to be the statutes from which the city in the premises here derives all its particular authority in question and that the city council and issuing officer, in this case the treasurer, received their respective powers directly from such statute in connection with authority to borrow temporarily in anticipation of taxes for current expenses and to issue the city's notes of indebtedness therefor so long as they comply with the express conditions set forth in the governing statute.

The petition for a prerogative writ of injunction is denied and dismissed.

*William E. Powers,* Atty. Gen., *Archie Smith,* Assistant Atty. Gen., for petitioner.

*J. Frederick Murphy,* City Solicitor, *Paul B. McMahon, Raymond F. Henderson,* for respondents City of Pawtucket, Vincent J. McAloon as City Treasurer, and Eugene X. Hodge as Chairman of the Joint Standing Committee on Finance of the City Council.

*John A. O'Neill,* for respondent Lawrence A. McCarthy as Mayor of the City of Pawtucket.