DECISION
This matter is before the Court on plaintiffs' claims for declaratory and injunctive relief pursuant to R.I. General Laws § 9-30-1 et seq. (Declaratory Judgment Act) and the Rhode Island Constitution.
Plaintiffs Marc A. Cote, Sandra J. Mellen and Robert P. Arruda brought this action against Lincoln C. Almond in his official capacity as Governor of Rhode Island, and James R. Langevin, in his official capacity as Secretary of State of the State of Rhode Island. Plaintiffs are Rhode Island residents, electors and proponents of amending the State Constitution to provide for voter initiative. Unopposed motions by the General Assembly, through the Speaker of the House and Majority Leader of the Senate, and the Attorney General to Intervene as Defendants were granted.
The pertinent facts, as agreed to by the parties, may be briefly summarized.
1. In 1994 Bruce Sundlun was the Governor of the State of Rhode Island.
2. In 1994 Barbara Leonard was the Secretary of State of Rhode Island.
3. In 1994 the Rhode Island General Assembly did not provide for a bi-partisan preparatory commission to assemble information on constitutional questions for the electorate, as provided for in Article XIV, Section 2 of the Constitution of Rhode Island.
4. On November 7, 1994 (one day prior to the general election of November 8, 1994), Governor Sundlun executed Executive Order 94-20 establishing a bi-partisan preparatory Commission, as required by Section 2 of Article XIV of the Constitution of Rhode Island.
5. The members of the Commission established by Executive Order 94-20 were not formally notified of their appointment and only one member was even informally notified of her appointment.
6. The preparatory Commission established by Executive Order 94-20 never convened.
7. On November 8, 1994, the electors, without the benefit of information assembled by a bi-partisan preparatory commission on constitutional questions, voted against a question on the ballot — "Shall there be a convention to amend or revise the Constitution?".
8. On the same date, however, the electors approved constitutional amendments regarding judicial selection, legislative compensation and the composition of the General Assembly.
At issue is the interpretation of Article 14, Section 2 of the Constitution of Rhode Island and the remedy to be ordained if a violation of said Constitution was committed.
Article XIV, Section 2 provides:
"The general assembly, by a vote of the majority of the members elected to each house, may at any general election submit the question, `Shall there be a convention to amend or revise the Constitution?' to the qualified electors of the state. If the question be not submitted to the people at some time during any period of ten years the secretary of state shall submit it at the next general election following said period. Prior to a vote by the qualified electors on the holding of a convention, the general assembly, or the governor if the general assembly fails to act, shall provide for a bi-partisan preparatory commission to assemble information on constitutional questions for the electors."
Plaintiffs complain that former Governor Sundlun's Executive Order 94-20, "establishing a sham preparatory commission violated Article 14,Section 2 of the Constitution" and deprived plaintiffs (and all other Rhode Island electors) of their right to decide the question of convening a constitutional convention on the basis of information on constitutional questions assembled by a preparatory commission, and absent granting the relief sought herein, this violation will continue to deprive plaintiffs of this right through November 2, 2004. Plaintiffs further complain that "the Governor's Executive Order 94-20 has abridged plaintiffs' right, as secured by Article 1, Section 1 of the Constitution, to make and alter their constitution of state government because the vote on question 4 at the election of November 8, 1994: (1) has inauthentically tolled plaintiffs' reserved right to periodically vote on holding a constitutional convention, and (2) the vote has had the effect of establishing a new ten year period, thereby inauthentically and unlawfully delaying the accrual of the Secretary of State's obligation to submit the question and delaying the accrual of plainitffs' reserved right to call a convention to revise or amend the State Constitution, without the approval of the General Assembly, until November 2, 2004."
Plaintiffs seek a declaration that Executive Order 94-20 "violated Article 14, Section 2 of the Rhode Island Constitution because the Order of November 7, 1994, establishing a preparatory commission was inherently incapable of fulfilling its constitutional duty of assembling information on constitutional questions for the electors the very next day's vote on the question, `Shall there be a convention to amend or revise the Constitution?'. Further, plaintiffs seek a declaration that this violation deprived plaintiffs of their right and continues to abridge their right, as secured by Article I, Section 1 of the Constitution, to alter their constitution of state government." Plaintiffs also seek prospective relief directing (1) "the Governor to establish a bona fide bi-partisan preparatory commission to assemble information on constitutional questions for the electors"; and (2) "the Secretary of State to submit the question ["Shall there be a convention to amend or revise the Constitution?"] to the electors at the next general election" (November 7, 2000).
The defendants, except the Governor, challenge the complaint on several grounds including that plaintiffs lack standing to maintain the action, the complaint fails to present a justiciable controversy as required under the Declaratory Judgment Act, mootness, abstention, political question, estoppel, waiver and laches. The Governor contends that none of the articulated defenses is appropriate and that the court should decide the case on its merits.
 Standing
Plaintiffs Marc A. Cote, Sandra J. Mellen and Robert P. Arruda are "Rhode Island residents, electors and proponents of amending the state constitution to provide for voter initiative." Marc A. Cote is "a State Senator who is the sponsor of a bill that would place on the ballot the question of amending the constitution to provide for voter initative." Sandra J. Mellen is "the Chair of the Voter Initiative Alliance ("VIA"), a political action committee formed to advocate passage of advisory question #8 regarding the adoption of voter initiative at the 1996 general election." Robert P. Arruda is "the Chair of Operation Clean Government ("OCG"), a grass-roots volunteer association of Rhode Islanders whose stated mission is to advocate for honest, responsive and responsible state government."
Plaintiffs assert that they have standing because (i) "their right to cast an informed vote on the question of convening a Constitutional Convention on the basis of information assembled by a bi-partisan preparatory commission has been subverted by Executive Order 94-20", (ii) "their right to alter the Constitution has been abridged by the unconstitutional 1994 vote", (iii) the 1994 vote on convening a constitutional convention was unconstitutional, and (iv) they have worked diligently on voter initiative from 1996 to 1998 and are dedicated to reform of the State Constitution.
Standing is an access barrier that calls for the assessment of one's credentials to bring suit. Blackstone Valley Chamber of Commerce v. Public Utilities Commission, 452 A.2d 931, 932 (RI 1982). Standing is a matter of determining "whether the person whose standing is challenged has alleged an injury in fact resulting from the challenged [act]. If he [or she] has, he [or she] satisfies the requirement of standing." Pontbriand v. Sundlun, 699 A.2d 856, 862 (RI 1997) quoting Rhode Island Opthamological Society v. Cannon, 113 R.I. 16, 26, 317 A.2d 124, 129 (1974), the "injury in fact" requirement "has been described by Justice Scalia in an oft-quoted passage as `an invasion of a legally protected interest which is (a) concrete and particularized *** and (b) actual or imminent, not `conjectural' or `hypothetical'." Pontbriand v. Sundlun, 699 A.2d 856, 862 R.I. (1997) (quoting Lujan v. Defenders of Wildlife,504 U.S. 555, 560, 122 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992)). "In deciding whether a particular plaintiff possesses the requisite standing, a court should draw the line not between whether the plaintiff has suffered a substantial injury or an insubstantial injury, but between injury and no injury." Ahlburn v. Clark, 728 A.2d 449, 451 (R.I. 1999). See Pontbriand v. Sundlun, 699 A.2d 856, 862 (R.I. 1997) (standing requirement met where bank depositors alleged, and the Governor admitted, the release of certain information to the media; depositors contended that this official act violated certain of their individual legal rights and that they suffered injury as a result); Roch v. Garrahy, 419 A.2d 827, 830-31 (1980) (holding that head of a major political party and prospective candidates of that party had standing to bring action alleging that the Governor had "failed to comply with statutory mandates in appointing members of the Board of Elections").
Such a minimum requirement of standing is essential even in cases that are brought allegedly to protect the public interest. Operation Clean Government v. Judicial Tenure, 741 A.2d at 262. The question of standing in an area of public interest centers on "whether an unfavorable outcome of the controversy will adversely affect the public interest." Matunuck Beach Hotel, Inc. v. Sheldon, 121 R.I. 386, 395, 399 A.2d 489, 494 (R.I. 1979). However, a plaintiff must allege "a personal stake in the controversy — his own injury in fact — before he [or she] will have standing to assert the broader claims of the public at large." Burns v. Sundlun, 617 A.2d 114, 116 (R.I. 1992). In Burns, plaintiff failed to meet the test for standing as the only injury the plaintiff asserted was "that he has been denied his right to vote on the establishment of off-track betting and the extension of an existing gambling activity." Id. The Court reasoned, "This injury is shared by each and every voter in the State of Rhode Island. The plaintiff has failed to allege his own personal stake in the controversy that distinguishes his claim from the claim of the public at large." Id.: See also Nye v. City of Warwick, 736 A.2d 82, 83 (R.I. 1999) (plaintiff lacked standing because of failure to plead a discrete "injury in fact" distinct from the public at large); McCarthy v. McAloon, 79 R.I. 55, 62, 83 A.2d 75, 78 (1951) (no standing for a member of the public who is injured unless a distinct legal interest different from the public at large exists; the public officer vested with the authority to redress a purely public wrong is the attorney general); Blackstone Valley Chamber of Commerce v. Public Utilities Commission,452 A.2d 931, 933 (R.I. 1982) ("[M]ere `interest in a problem' no matter how longstanding the interest and no matter how qualfied the organization is in evaluating the problem, is not sufficient by itself to render the organization `adversely affected' or `aggrieved' * * *." (quoting Sierra Club v. Morton, 405 U.S. 727, 739, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636, 645 (1972)).
Have the plaintiffs alleged an injury in fact that is distinct from the public at large? Specifically, plantiffs allege "actual injury to their right to cast an informed vote." It sems that plantiffs' standing relies on an injury in common with the body of electors who voted in the 1994 general election. Planitiffs concede, "It is undeniably true that Executive Order 94-20 violated the Constitutional rights of each and every citizen of the State of Rhode Island." Plaintiffs have not alleged a personal stake in the outcome, nor do they allege a claim that is distinct from the general public.
Plaintiffs strive to distinguish themselves from the public at large by citing their extensive political efforts from 1996 to 1998 regarding voter initiative, as well as their interest in constitutional reform. Plaintiffs' identity and interest do not create standing. Standing arises at the moment the legally protected interest is invaded. Once the `challenged act' occurred, the plaintiffs cannot create standing by referencing subsequent membership and political actions to distinguish themselves from the general public.
As recently as September 13, 2000, our neighbor to the north, the Supreme Judicial Court of Massachusetts, declined the request of a pregnant woman to challenge the decision of a Massachusetts Superior Court judge who ordered a pregnant woman of a religious sect into custody to protect her fetus [Barbara F. vs. Bristol Division of the Juvenile Court Department, 432 Mass. 1024]. The petitioner claimed that all women's rights were harmed by the decision and that to allow confinement for the probable refusal to accept medical care for the fetus could easily lead to the State confining an expectant mother for ingesting drugs, alcohol or even unhealthy foods. In its decision, the Supreme Judicial Court stated that "it is a long-established legal principle that only those who have actually suffered, or who are in danger of suffering personal harm, have standing in a court case". It noted previous decisions that "injuries that are speculative, remote and indirect are insufficient to confer standing". So it is in the circumstances of this case. Accordingly, this Court finds the plaintiffs lack the standing essential to proceed.
Even assuming the plaintiffs have standing, their prayer for the relief requested must fail. Specifically, the prayer for relief seeks, first, a declaration from this Court that Governor Sundlun's November 7, 1994, Order violated Article XIV, Section 2 of the Constitution and that such violation deprived plaintiffs of their right, and continues to abridge their right, as secured by Article I, Section 1 of the Constitution (to alter their constitution of state government).
The plaintiffs' zealous support of voter initiative is commendable. However, it must be recognized that other legitimate and respected constituencies and historians oppose the concept embraced by voter initiative: oppose the concept of having "direct democracy", the very form of government that James Madison and the founding fathers feared most. In his new book, Democracy Derailed, the widely respected journalist David S. Broder details the unexpected and, to some, the unfortunate consequences of allowing voters to bypass the concept of representative government that has served this country and this state well for over 200 years.
Whether voter initiative is or is not wise, or is or is not the preference of the electorate, has no bearing on this decision. Whether a constitutional convention should be convened, similarly, has no bearing on this decision. The concerns expressed by Broder and others, publicly, are simply a recognition of the fact that this Court cannot assume that had the preparatory commission been properly organized, it would have identified voter initiative as a reason for the convening of a constitutional convention and the voters who participated on November 8, 1994, would have felt likewise. Indeed, in the reply memorandum filed by the plaintiffs, they concede such a finding would be both speculative and irrevelant.
Further, plaintiffs' implication that the electorate did not know or did not understand what they were voting against in rejecting the call for a constitutional convention cannot be assumed by this Court. If it were otherwise, would not the Court be required to assume, if an appropriate challenge were made, that those voting in favor of merit selection of judges, those who favored a decision on downsizing the Legislature and those who favored term limitations for our constitutional officers did not understand what they were doing?
Our Supreme Court, in addressing a challenge to an election result, put it this way:
"We recognize that there is a strong public policy favoring stability and finality of election results. Courts should be reluctant to upset an election absent some compelling reason to do so. . . . A contestant may not rely upon speculation to upset an election result". Buonanno v. DeStefano, 430 A2 770 (RI 1981).
In the circumstances of this case, for this Court to find that but for the failure of Governor Sundlun to properly organize a bi-partisan preparatory commission the voters would have voted in favor of the convening of a constitutional convention would be rank speculation. Accordingly, the prayer to declare that because of the absence of a bi-partisan preparatory commission the rights of the plaintiffs to amend the Constitution were violated is denied.
The plaintiffs further seek an injunction (1) directing the Governor to establish a bona fide bi-partisan preparatory commission to assemble information on constitutional questions for the electors and (2) directing the Secretary of State to submit the question to the electors at the next general election (November 7, 2000).
Although, indeed, there are very interesting and legitimate claims and defenses to address on the two aforementioned requests, because of the impracticality of having such a bi- partisan preparatory commission established and submitting the question of whether a constitutional convention should be convened to the voters on November 7, 2000, I respectfully decline to decide the merits of the plaintiffs' two requests.
As stated earlier, the plaintiffs do not have the requisite standing to seek the specific relief requested. The motions of the Speaker of the House of Representatives, the Majority Leader of the Senate and the Attorney General to dismiss the action are granted.