LEWIS A. TAFT *et al. vs.* ZONING BOARD OF REVIEW OF THE CITY OF WARWICK.

FEBRUARY 25, 1949.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

118

CAPOTOSTO, J. This is a petition for a writ of certiorari directed to the zoning board of review of the city of Warwick, hereinafter called the board. The petitioners seek the review of a decision of the board sustaining the granting of a building permit issued to the applicant George Langford by the building inspector of that city, hereinafter called the inspector. The writ was issued and the board has duly certified the record in question.

By stipulation dated December 20, 1948 the parties

agreed that the facts as outlined in the briefs of the respective parties are admitted. From the record of the board it appears that the petitioners and Langford are the owners of abutting premises in a class B residence district under the zoning ordinance. At the time of the adoption of that ordinance in 1945 there was on Langford's land a flat-roofed wooden building on a concrete foundation 26 feet long by 28 feet wide, which building, apparently a garage, has been used in more recent years for the storage of construction materials. On one side the front of the building is three fourths of an inch from the division line between the two properties and the rear thereof is three feet from that line. Langford's lot is 6091.21 square feet in area and has a frontage of 50 feet on Hollywood street.

Langford, intending to convert the building into a four-room dwelling, applied for the necessary permit to the inspector who, after examining the plans and viewing the premises, granted it on the ground that the contemplated improvements "would be an asset to the community." The plans are not part of the record before us but from a summary of the contemplated changes in respondent's brief it appears that Langford at least intended to replace the flat roof with a "peaked roof," install a "picture window" in place of the doors, construct a front entrance to the building, and partition the inside thereof into four rooms.

The petitioners contend that the action of the board was arbitrary and without warrant of law on three main grounds: First, that Langford's premises as well as their own are subject to a plat restriction that no one-family house costing less than $4000 shall be built on any lot, whereas the estimated cost of Langford's house, as shown on the building permit, was $2000; secondly, that the changing of the roof on his building from a flat roof to a "peaked" one would cause rain, snow and ice to be discharged upon petitioners' premises by reason of the close proximity of that building to the division line, thereby creating or tending to create a condition in the nature of a nuisance on their

land; and, thirdly, that under the zoning ordinance neither the inspector nor the board had authority to grant to Langford such a permit as the one under consideration.

We note here that this is not the case of an appeal from a decision of the board on an application for an exception or variance under the zoning ordinance. In our judgment the controlling question before us is whether the building permit to Langford was lawfully issued for the purpose therein specified.

The ordinance in so far as pertinent is as follows. Section II provides: "No building or land shall be used and no building shall be erected or *structurally altered* except in conformity with the regulations herein prescribed." (italics ours) Section VI applies to "Residence B Districts" in one of which Langford's building is located. It is prescribed in subsections (C), (D), (E) and (F) respectively of said section that each building "hereafter erected" shall have a minimum lot area of 7000 square feet; a street frontage of 70 feet for each single family dwelling; a front yard not less than 25 feet; and, with certain exceptions not material here, a side yard not less than 8 feet in width along each lot line other than a front street line, side street line or rear line.

In support of the validity of the building permit the respondent urges two main contentions. First, it contends that the restrictions imposed by the above-mentioned subsections relate only to the erection of an entirely new building, stressing the presence of the words "hereafter erected" in each of those subsections. From this it argues that since Langford was merely altering an existing building those restrictions did not apply to him. Its second contention, as we understand it, is that Langford is not required to meet those requirements because he intended to convert the use of his building from a nonconforming to a conforming use, as permitted under section XIII (D) of the ordinance. On due consideration of the particular language

of the ordinance now before us we are not impressed by either of those contentions.

The rules of statutory construction apply with equal force in interpreting an ordinance. The intent of the legislative body is to be gathered in this case from the ordinance taken as a whole, and not merely from a part thereof, without reference to other clearly expressed provisions. All provisions in the ordinance must be given effect, if reasonably possible, so that no part will become inoperative. *Bijou Amusement Co.* v. *Toupin*, 63 R. I. 503; *Jackvony* v. *Berard*, 66 R. I. 290; *Carty* v. *American Mutual Liability Ins. Co.*, 70 R. I. 472. Whenever the language of a statute or ordinance is susceptible of more than one reasonable interpretation, that interpretation will be adopted which will best carry out its evident purpose. *Cuddy-Gardner Co.* v. *Unemployment Comp. Board of R. I.*, 69 R. I. 36.

It is clear that, like all zoning ordinances, the building regulations specified in the ordinance under consideration principally concern new construction, or, as therein expressed in the subsections hereinbefore mentioned, buildings "hereafter erected"; but it does not necessarily follow from such language that substantial structural changes which completely alter the identity and use of an existing building can be authorized in disregard of such regulations when applicable. In our judgment the evident intent of the ordinance is to prescribe reasonable building regulations that shall apply to all buildings in certain circumstances so as to promote the orderly use and development of all property in the various zone districts. If unnecessary hardship results to an individual landowner from a strict application of such regulations under the ordinance he may seek relief by appropriate proceedings before the board.

The provision of section II of the ordinance hereinbefore quoted is not to be disregarded by the inspector in issuing a building permit. The express prohibition in that section that no building shall be used, "*erected or structurally altered* except in conformity with the regulations herein

prescribed" is an express limitation on his authority to issue such a permit unless the applicant complies with the pertinent regulations. (italics ours) The ordinary meaning of that language clearly indicates that the prohibition was intended to cover existing buildings that were to be structurally altered as well as new ones. New buildings are "erected" and only those in existence can be "structurally altered."

In the absence of definition in the zoning ordinance of the term "structurally altered," which apparently has a technical meaning in building construction, we have been obliged to look elsewhere for guidance in ascertaining the reasonable meaning of that term as used in the present ordinance. The respondent relies on a number of cases in which the term alteration or structurally altered has been construed by other courts under ordinances materially different from the one in the instant case. But both parties appear to have overlooked the fact that the meaning of the term under consideration may be determined by referring to the building ordinance of the city of Warwick which was in force and therefore binding upon the inspector when he issued the building permit to Langford.

Under the title "Definitions," which is sec. 7 of the building ordinance, the word "Alteration" is defined as "Any change, addition or modification in the construction of a building," apparently meaning the erection of a new building, "or the building in, or installing of a fireplace, stairway, chimney or elevator," which provision is plainly applicable to an existing building. The word "Repairs" is defined as "The renewal of any part of a building. Such repairs shall not be construed to include any 'alteration' as herein defined, or such renewal as in the opinion of the Inspector amounts to the conversion of the building in whole or in part into substantially a new building." This definition, which is certainly broader than the latter portion of the definition of the word "alteration," is clearly applicable only to an existing building.

In this situation the term "structurally altered" in the zoning ordinance must necessarily be construed in accordance with the provisions of the building ordinance, as, in purpose and effect, the two ordinances are mutually related. This is not a case of minor changes as to which the inspector may exercise his discretion. Here Langford's garage or storage building is to be structurally altered and converted into a dwelling. The making of such a substantial change in the construction, identity and use of the present building constitutes a structural alteration within the contemplation of the ordinance. It being undisputed that Langford's application did not comply with the regulations in the ordinance applicable to a building that is to be "structurally altered," it is our opinion that the inspector was without authority to issue the permit in question, and further that the board erred in approving the permit.

We find no merit in respondent's second contention that because Langford was changing the use of the building from a nonconforming to a conforming use he was entitled to the permit as a matter of right. While such a change might be desirable it does not entitle him to structurally alter the building in disregard of pertinent regulations of the building and zoning ordinances.

The petition for certiorari is granted, the decision of the respondent board is reversed, and the papers in the case are ordered sent back to the respondent board.

*Edmund J. Carberry, Jr., Aram A. Arabian,* for petitioners.

*Hailes L. Palmer,* City Solicitor, *Edward F. Hindle, Edwards & Angell,* for respondent.