**KORDICK PLUMBING AND HEATING COMPANY, Inc., Appellee,**

v.

**James V. SARCONE, as Polk County, Iowa Zoning Administrator, et al., Appellants.**

No. 54874.

Supreme Court of Iowa.

Sept. 9, 1971.

Ray A. Fenton, County Atty., and Robert B. Scism, Des Moines, for appellants.

Robert E. Dreher, Des Moines, for appellee.

REES, Justice.

This appeal involves the ultimate question as to whether the trial court erred in interpreting the Polk county zoning ordinance so as to permit the establishment of a mobile home residence park in an area zoned under the county zoning ordinance as M–2, heavy industrial district.

Plaintiff corporation is the owner of an undeveloped 64-acre tract lying south of Interstate highway 80 in Polk county. It made application for issuance of a building permit for the construction of a mobile home residence park on the premises owned by it which premises are a part of and surrounded by other portions of an area zoned by Polk county as a heavy industrial district and identified by the ordinance as an M–2 zone. The defendant Sarcone, acting in his capacity as zoning administrator, advised plaintiff by letter the Polk county zoning ordinance did not permit the construction of a mobile home residence park in an M–2 district. After further proceedings which are not pertinent to this appeal, plaintiff filed its petition in the district court of Polk county for writs of mandamus and certiorari. The writ of certiorari was ordered issued and the matter came on for trial, the principal and only issue presented being whether the zoning ordinance permits or does not prohibit the construction of a mobile home residence park in a district classified under the ordinance as a heavy industrial district, or M–2 district. Trial court held the ordinance does permit establishment of a mobile home residence park in an M–2 heavy industrial district, but that the requirements of another section of the ordinance, Article 11, which provide for and regulate the establishment of mobile home residence parks in a district identified as R–4, applied to any mobile home project to be developed or constructed in an M–2 district. Trial court ordered issuance of writ of mandamus as prayed requiring defendants to issue building permit to plaintiff. We are unable to agree with the interpretation placed upon the ordinance by the trial court, and reverse.

In their assignment of errors upon which they rely for reversal, the defendants contend the court erred in: (1) ruling the Polk county zoning ordinance does not prohibit the location of a mobile home residence park in an area classified M–2, heavy industrial district; (2) ruling the Polk county zoning ordinance does not prohibit the location of mobile homes (as distinguished from a mobile home residence park) in an area classified M–2, heavy industrial district; (3) failing to rule the Polk county zoning ordinance restricts the location of mobile home residence parks to areas classified R–4, mobile home park residence district; and, (4) ruling the Polk county zoning ordinance classification, M–2, heavy industrial district, is all-inclusive and incorporates within it the classification R–4, mobile home park residence district.

Article 5 of the ordinance under scrutiny here provides that for the purposes of the ordinance itself, the unincorporated territory of Polk county is divided into the following districts: A–1 agricultural, R–1 suburban residence, R–2 one & two-family residence, R–3 multi-family residence, R–4 mobile home park residence, C–1 local commercial, C–2 highway service, C–3 general commercial, M–1 light industrial, M–2 heavy industrial, and U–1 unclassified. Article 16 of the ordinance covers and em-

braces the regulations and enumerates the principal permitted uses of the M–2 heavy industrial district, and it is with this section of the ordinance we are principally concerned in this appeal. The general regulations section of the ordinance is Article 6, and reference is made to conformance with the general regulations in Article 16. Article 16, among other things, provides:

"A building or premises may be used for any purpose except those listed immediately below *and those listed in Section H, Article 19, 'Special Uses.'* (italics supplied).

"1. No building permit shall be issued for any use in conflict with any resolution of Polk County or law of the State of Iowa regulating nuisances.

"2. No building permit shall be issued for any dwellings, schools, hospitals, clinics and other institutions for human care, except where incidental to a permitted principal use.

"3. No building permit shall be issued for any of the following uses until and unless the location of such use shall have been authorized by the Board of Adjustment as provided for under Article 19, Paragraph H: * * *" (here follows the enumeration of several use classifications, none of which is referable to the use of premises in the M–2 district for the establishment of mobile home residence parks).

I. Our review is on assigned errors, the trial court's findings of fact having the force of a jury verdict. Section 358A.21, Code, 1971; Jersild v. Sarcone, 260 Iowa 288, 292, 149 N.W.2d 179; Deardorf v. Board of Adjustment, 254 Iowa 380, 384, 118 N.W.2d 78, 80.

We are not confronted with any questions relative to the regularity of the proceedings culminating in the adoption of the ordinance, nor does either party make any contention the ordinance was not enacted in accord with a comprehensive plan as is required by Chapter 358A, and particularly section 358A5, Code, 1971.

II. Succinctly stated, the defendants' position in this appeal is that Article 16 of the zoning ordinance does not *permit* the establishment of mobile home residence parks in an M–2 heavy industrial district, but conversely, the plaintiff insists Article 16 does not *prohibit* the establishment of mobile home residence parks in a heavy industrial district. This distinction is interesting as an exercise in semantics, but is of little help to us in the determination of the ultimate question presented by this appeal.

Generally speaking, ordinances promulgated pursuant to authority delegated to a local governing body are extensions of state statutes and are to be construed as statutes, and should therefore be construed liberally to effect their purpose. Section 4.2, Code, 1971; Taft v. Zoning Board of Review, 75 R.I. 117, 64 A.2d 200, 201; 101 C.J.S. Zoning § 128, p. 881. However, it is well settled that zoning is an exercise of the police power delegated to local governing bodies and ordinances with respect thereto must be strictly construed. Anderson v. City of Cedar Rapids (Iowa 1969), 168 N.W.2d 739, 742; Livingston v. Davis, 243 Iowa 21, 26, 50 N.W.2d 592, 596; 27 A.L.R.2d 1237, 1244. See also McQuillin, Municipal Corporations, 1965 Rev.Vol. 8, § 25.72, p. 191, and Rathkopf, Law of Planning and Zoning, Vol. 1, Ch. 8, and 1970 Cum.Supp. thereto.

III. In our consideration of the question presented here, we must give consideration to the ordinance in its entirety. City of Tipton v. Tipton Light & Heating Co., 176 Iowa 224, 229, 157 N.W. 844, 846; Mallory v. Paradise, 173 N.W.2d 264, 266 (Iowa 1969); City of Nevada v. Slemmons, 244 Iowa 1068, 1071, 59 N.W.2d 793, 794. The ordinance must be read as a whole, and each section thereof given consideration so as to give the ordinance its natural and intended meaning. Talarico v. City of Davenport, 215 Iowa 186, 193, 244

N.W. 750, 753; Becker v. City of Waterloo, 245 Iowa 666, 669, 63 N.W.2d 919, 920. Rule 344(f)13, Rules of Civil Procedure, provides, "In construing statutes, the courts search for the legislative intent as shown by what the legislature said, rather than what it should or might have said", and is applicable to the question presented by this appeal.

IV. We perceive no ambiguity in the ordinance under scrutiny here. The ordinance clearly expresses its intendment, purpose and design and therefore, while there may be ground for interpretation of the ordinance there is no occasion to resort to rules of construction. Kruck v. Needles, 259 Iowa 470, 476, 144 N.W.2d 296, 300; Hardwick v. Bublitz, 253 Iowa 49, 54, 111 N.W.2d 309, 311. We recognize a distinction is sometimes made between the words *construction* and *interpretation.* Construction has been said to be the drawing of conclusions respecting subjects that lie beyond the direct expression of the text from elements known from and given in the text although not within the letter of the same, while interpretation is the art of finding the true sense of any form of words. 50 Am.Jur., Statutes, § 218, p. 198; Black's Law Dictionary, Rev. 4th Ed. p. 386; Fleming v. Hawkeye Pearl Button Co. (D.C.Iowa) 113 F.2d 52. If we had found ambiguities in the ordinance, we might have employed the doctrine of contemporaneous construction in which the wording of an ordinance and the practical construction accorded thereto by enforcing officers is given great weight by the court. Whattoff v. United States, 355 F.2d 473 (CA 8 Iowa 1966); 56 Am.Jur.2d, Municipal Corporations, § 405, pp. 448–449; 62 C.J.S. Municipal Corporations § 226(16)a, p. 480; 101 C.J.S. Zoning § 128, p. 883.

■ V. Article 6 of the zoning ordinance under examination here is the general regulation article of the ordinance and is relatable to all of the sections or articles which establish zones or districts and prescribe uses. The provisions of Article 16 with respect to the establishment of the M–2 or heavy industrial district are explicit and we refer to the principal permitted use phrases of Article 16 quoted hereinabove. The language quoted above necessarily means to us that the M–2 or heavy industrial district may be used principally for any purpose except the purposes listed in Article 16 itself and except those listed in Article 19, § H, which defines special uses. An examination of Article 19(H) indicates that mobile homes will be permitted as a special use in the districts enumerated in Article 19 only, and under the regulations of Article 19 itself. Article 19(H)9 permits mobile homes as "special uses" in districts A–1, R–1, R–2, R–3, C–3 and M–1. Mobile homes are not permitted as a special use in district M–2, and the clear language of Article 16 excludes any special use from the enumeration of principal permitted uses; hence, we are forced to the necessary conclusion that a mobile home is not permitted in M–2, heavy industrial district, either as a principal use or as a special use.

■ Plaintiffs argue there is a distinction between mobile home parks and mobile homes, and that the exclusion of a mobile home from district M–2 does not necessarily exclude the establishment of a mobile home residence park in the district. It would be totally illogical for this court to hold that placement of enough mobile homes on a lot to qualify it as a mobile home residence park is not within the plain prohibition of the ordinance. We adhere to the rule that prohibition of the singular generally means prohibition of the plural. Rural Ind. Sch. Dist. of Osprey v. County Bd. of Education, 253 Iowa 265, 271, 111 N.W.2d 691, 695; 50 Am.Jur. Statutes, § 256, p. 251; 82 C.J.S. Statutes § 337, pp. 675–676. In fact, Article 4 of the ordinance provides "Words used in the present tense shall include the future, the singular number shall include the plural and the plural the singular; * * *".

The plaintiff next asserts that the definition of a dwelling in Article 4 of the ordinance excludes mobile homes unless they

comply with section 135D.26, Code 1971, which provides a mobile home may be converted to a dwelling by the removal of its mobile components. Therefore, the plaintiff contends mobile homes are not prohibited in an M–2 district by Article 16(A)2, which states, "no building permit shall be issued for any *dwelling*, schools, * * * except where incidental to a permitted principal use." (Italics ours).

This part of the ordinance really has no bearing upon the conclusion we reach in this case, for as noted above, mobile homes and mobile home parks are prohibited in the M–2 districts regardless of whether they fit into the definition of a dwelling.

Plaintiff argues that such a conclusion is illogical, and that it will prohibit all special uses in M–2 districts, and thus exclude special uses from the least restrictive district but allow the same special uses in more restrictive districts. We do not agree. Special uses are permitted only in the districts enumerated in Article 19(H) which defines special uses, and only by following the procedure outlined in Article 19(H). Article 16 does not exclude special uses entirely from M–2 districts, only from principal uses. If the particular section defining the use as a special use allows that special use in M–2 districts, then a special use permit may issue. It is clear to us the ordinance excludes mobile homes and mobile home parks from M–2 districts, and that the trial court erred when it interpreted the ordinance otherwise.

■ VI. We now consider whether the ordinance restricts the location of mobile home residence parks to R–4 districts, which allow the establishment of mobile home residence parks as a principal use. It is obvious the enactors of the ordinance intended to restrict mobile home residence parks to R–4 districts by including in the ordinance a special zone which was not inclusive of the higher residential uses, and which did not permit special uses. The very nature of mobile home parks and their proliferation require that local governing bodies regulate them, and that such regulation is within the police power of a municipality. Huff v. City of Des Moines, 244 Iowa 89, 94, 56 N.W.2d 54, 57. See also 48 Iowa L.Rev. 16, 33–35. By Article 11 of the ordinance, the ordaining authority declared that mobile home residence parks may be located only in an R–4 district, and shall be subject to the regulations provided specially in Article 11 for the establishment of such parks.

Mobile home parks are defined in Article 4 as, "Any lot or portion of a lot upon which two (2) or more mobile homes occupied for dwelling or sleeping purposes are located, regardless of whether or not a charge is made for such accommodation." Thus, any lot upon which two or more mobile homes are located is a mobile home park within the ordinance definition, and must be located within the district designated as R–4.

Single mobile homes may be located as a special use in districts other than district R–4, but only in districts enumerated in Article 19(H)9, and then only one mobile home may be located on a single lot.

■ Any interpretation of the ordinance other than above would clearly defeat the intent of the enactors to keep mobile homes in a separate district and subject to specified regulations. We, therefore, conclude Article 11 of the ordinance establishing the R–4 mobile home residence park district, when considered with the other articles of the ordinance, clearly limits the establishment of mobile home residence parks to the R–4 districts.

■ VII. We now consider defendants' contention trial court erred in ruling the Polk county zoning ordinance classification, M–2, heavy industrial district, is all-inclusive and incorporates within it the classification R–4, mobile home residence park district.

In the early development of the body of law respecting zoning, the general rule enunciated was that a higher or more re-

strictive use was permitted in a lower or less restricted use zone. Lamb v. City of Monroe, 358 Mich. 136, 99 N.W.2d 566, 571; Kozesnik v. Montgomery Twp., 24 N.J. 154, 131 A.2d 1, 9. However, the trend is very clearly away from permitting higher uses to be established in lower use districts as a matter of right. In Kozesnik v. Montgomery Twp., *supra*, 131 A.2d at p. 9, the New Jersey court said, " * * * there is no rule of law, statutory or constitutional, which ordains that any use has an exalted position in a zoning scheme entitling it to move everywhere as of right." Even in zoning schemes where the higher resident use is permitted to move into a lower resident zone, the cumulation ceases at the lowest grade and does not, for example, allow the introduction of residential uses into zones designated for business or industrial uses. McQuillin, Municipal Corporations, Vol. 8, § 25.119, pp. 318–319.

Further, in Kozesnik v. Montgomery Twp., *supra,* 131 A.2d at page 9, we find, "Experience has satisfied many that for example, homes are no more appropriate in an industrial district than industry in a residential one. In both situations the baleful influences upon residences are the same. Moreover, industry may prefer to avoid the frictions which may ensue when discordant uses are side by side * * *." See also Lamb v. City of Monroe, *supra,* 99 N.W.2d at 570; People ex rel. Skokie Town House Builders, Inc., v. Village of Morton Grove et al., 16 Ill.2d 183, 157 N. E.2d 33, 36; Newark Milk & Cream Co. of Newark v. Parsippany-Troy Hills, 47 N.J. Super. 306, 135 A.2d 682, 695; Rathkopf, The Law of Zoning and Planning, 3rd Ed., Chapter 14, pages 6–7, and 1970 Cum.Supp. thereto.

In its holding the M–2 zone was all-inclusive of higher uses, the trial court clear-ly departed from the modern approach to zoning in separating residential uses from industrial uses, and the obvious purpose of the ordinance under consideration here.

While the mobile home may not fit in the definition of "dwelling" in Article 4 of the ordinance unless it complies with section 135D.26(1), Code 1971, by modification or removal of its movable components, the necessary construction of Article 16 of the ordinance excludes mobile homes from the M–2 district. We also note the use of the term "residence" in the title of Article 11 establishing the R–4 district equates that district with any residences in the ordinance and the exclusion of dwelling from the M–2 district must, by necessary implication, exclude mobile home residence parks from the M–2 district. The holding of the trial court defeated the primary purpose of the zoning ordinance in its design to separate residential areas from industrial areas, recognizing the unfavorable influences each exerts on the other.

It is therefore our conclusion the trial court erred in its interpretation of the ordinance. The ordinance expressly prohibits the construction of mobile home residence parks in the M–2 district and limits the establishment of mobile home parks to the R–4 district. The ordinance does not permit or allow all higher or more restrictive uses in the M–2 heavy industrial district.

We hold the trial court erred in its interpretation of the ordinance. This case is therefore reversed.

Reversed.

All Justices concur, except MOORE, C. J., who takes no part.