**CITY OF NEW HAMPTON, Appellee,**

v.

**BLAYNE–MARTIN CORPORATION, Dennis Hansen, Leslie Hansen, and Brincks Construction, Appellants.**

No. 97–891.

Supreme Court of Iowa.

April 28, 1999.

Christopher F. O'Donohoe of Elwood, O'Donohoe, O'Connor & Stochl, New Hampton, for appellants.

Joel J. Yunek of Laird, Heiny, McManigal, Winga, Duffy & Stambaugh, Mason City, and Kevin J. Kennedy of Kennedy & Kennedy, New Hampton, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and CADY, JJ.

NEUMAN, Justice.

This is an appeal from a district court order enjoining further construction on a garage situated in the City of New Hampton, Iowa. Two principal questions are posed on appeal: Did the district court erroneously interpret the city's building code on a motion to adjudicate law points? And did the district court erroneously deny appellants' claim to a vested right in a building permit previously issued, thereby erring in its issuance of an injunction? Because we agree with the court's ruling on the vested interest question, we affirm the court's issuance of an injunction pending the city's approval of a new building permit. We also affirm that portion of the court's order granting the appellants further time to submit a new application and complete construction. We reverse, however, the court's erroneous interpretation of the city's building code as it affects the specifications of the proposed structure.

## I. Background Facts and Proceedings.

Blayne–Martin Corporation, owned by appellants Dennis and Leslie Hansen, purchased a dilapidated hotel in downtown New Hampton and renovated it into a seventeen-unit apartment building.[1] A city ordinance required off-street parking for the tenants. The city agreed to lease to Dennis Hansen a portion of a city-owned parking lot located nearby. Both the apartment building and adjoining parking lot are located in an area designated as a "fire district" by the New Hampton fire code.

After acquiring the lease for the parking lot, Hansen decided to build a multi-car garage for the tenants. Because he was reluctant to make so substantial a capital expenditure on leased land, he sought—and the city eventually granted—an option to purchase the land. Negotiations over the option commanded the attention of several city council meetings. Hansen proposed construction of a Morton-style garage, commonly called a "pole barn." The council was concerned that this type of construction might not conform aesthetically to other downtown buildings. Hansen assured the council that the garage would have an appropriate appearance, and offered a computer generated sketch of the proposed building's exterior.

In late November 1995, Hansen applied for a building permit. Attached to Hansen's application was a sketch of the exterior of the garage showing some dimensions. The zoning administrator, Donald Markle, approved the application and issued a building permit. By mid-December the city and Blayne–Martin Corporation had executed an agreement granting Blayne–Martin an option to purchase the leased parking lot for $15,000 during the term of the lease. The agreement, however, required Hansen to construct a garage on the leased premises within one year. Failure to meet the deadline would void the option. The option also required Hansen to comply with all city regulations regarding zoning or building in a fire zone.

Hansen immediately began ordering construction materials. Most of the materials were specifically prepared or cut for this project, making them nonreturnable and of only limited salvage value. By late December, Hansen's contractor—Brincks Construction—began working on the garage. By early January 1996, Brincks set about twenty-two treated wood posts into the ground and began installing some beams or braces.

Meanwhile city officials learned that zoning administrator Markle had been issuing building permits without complying with city regulations. Acting on numerous complaints, the city replaced Markle in December 1995 with a new zoning administrator, Daniel Hartson. Hartson was in-

1. Unless otherwise indicated, the appellants shall be referred to simply as "Hansen" throughout this opinion.

structed to scrutinize applications more carefully to ensure strict compliance with building codes. The record reveals that he was not expected to review projects already completed by January 1, 1996, but was to follow up on projects started prior to that date and not yet completed.

While driving around the city in early January, Hartson noticed the twenty-two wooden posts set in the ground for Hansen's garage. Hartson's attention was drawn to the site because the posts were located in the fire district where wooden construction is not permitted. Upon inspection, Hartson noted a number of safety concerns including whether the walls and roof would be built with fireproof material, a possible building setback violation implicating water and ice problems from a roof overhang, and surface water drainage problems. He then proceeded to review the building permit and sketchy application which Hansen had filed. After meeting with the mayor and city attorney about his concerns, Hartson sent a written notice to Hansen ordering him to stop work on the project. The notice identified his safety concerns, requested a list of all building materials and an electrical diagram, and indicated that these concerns needed to be resolved before construction could continue.

Hansen was upset by the revocation of the building permit and believed the new zoning administrator's actions were unfair and unfounded. He furnished a general materials list and demanded to know how other buildings in the vicinity managed to meet the supposed fire code requirements. After extensive correspondence and personal appearances by Hansen and his wife, Leslie, at city council meetings, the council determined the proposed construction did not meet code regulations. It also declined to issue a special permit to complete the project as originally planned. In particular, the city required the installation of three inches of fiberglass insulation on the interior walls and roof, covered with ⅝″ gypsum board or other fire-resistant mate-

rial. This was in keeping with the zoning administrator's interpretation of city ordinance 61.16, which provides:

WALLS AND ROOF. The building or structure shall be enclosed on all sides with walls constructed wholly of stone, brick, terra-cotta, hollow building tile, concrete or other fire proof material and the roof, top and sides of all roof structures, including dormer windows and cornices, shall be covered with incombustible material, such as metal, slate, tile, composition shingles or roofing approved by the National Board of Fire Underwriters as Fire Resistive. Should the wall of any building be constructed of steel, the same shall contain a minimum of three (3) inches of fiberglass insulation.

Municipal Code of the City of New Hampton § 61.16.

Frustrated with the city's denial of a special permit, and allegedly faced with new requirements each time he spoke to Hartson, Hansen instructed Brincks to continue with the construction. The city responded by filing an action to enjoin the construction. The district court issued a temporary injunction. Hansen then filed an application for adjudication of law points, directing the court's inquiry at the city's interpretation of ordinance 61.16. See Iowa R. Civ. P. 116 (1998) (authorizing separate adjudication of law points). The motion urged the court to find that so long as the building was enclosed with steel siding, Hansen had no need to cover the *interior* surface of the walls with fireproof material. The district court rejected Hansen's interpretation and ruled in the city's favor, finding that "[i]n order to give meaning to the provision of the ordinance requiring 3″ of insulation, some reasonable interior wall covering of fireproof material is obviously contemplated by the ordinance."

The matter proceeded to trial on the city's request for a permanent injunction. The district court held that the city had the authority to withdraw the building per-

mit once it realized it had been issued improperly. The court also found Hansen's construction plans failed to comply with city ordinances, no due process or equal protection rights had been violated, and a counterclaim for damages under Iowa Code chapter 670 (1995), Tort Liability of Governmental Subdivisions, had no merit. The court enjoined Hansen from further work on the garage without first obtaining a new permit from the city, but granted him additional time to complete the construction in view of the time constraints in the parties' option contract. This appeal by Hansen followed.

## II. Scope of Review.

■ A request for an injunction invokes the court's equitable jurisdiction. *Matlock v. Weets,* 531 N.W.2d 118, 121 (Iowa 1995). Thus our review on appeal is de novo. *Id.* We give weight to the district court's findings of fact, especially when considering the credibility of witnesses, but are not bound by them. *Id.*

■ Although an agency is entitled to some deference in the interpretation of rules and statutes it administers, final construction and interpretation of pertinent law is always a question of law for this court. *Ernst v. Johnson County,* 522 N.W.2d 599, 602 (Iowa 1994). As we evaluate the parties' competing claims, we are mindful "that zoning is an exercise of police powers delegated to municipalities by the state, and, thus, the ordinances are to be strictly construed." *City of Lamoni v. Livingston,* 392 N.W.2d 506, 509 (Iowa 1986).

## III. Issues on Appeal.

■ A. *Vested Rights.* Hansen contends the new zoning administrator had no power to revoke the original building permit, and the district court erred when it ruled to the contrary and enjoined further construction. Appellants claim they obtained a vested right in the permit because the former zoning administrator's interpretation of the permit requirement was reasonable and Hansen relied on it. Detrimental reliance is proven, appellants assert, by the expenditure of over $19,000 in labor and materials, only $943 of which will be recoverable if the materials are returned.

The city counters that Hansen's permit application wholly failed to comply with the ordinance governing permit applications within the city's fire district. The applicable ordinance states:

> PLANS SUBMITTED. It shall be unlawful to build, enlarge or alter any wall, structure, building or part thereof, with [sic] the Fire Limits, *until a plan of the proposed work, together with a statement of materials to be used shall have been submitted to the administrative officer of the planning and zoning commission,* who shall, if in accordance with the provisions of this chapter and zoning regulations, issue a permit for the proposed work.

Municipal Code of the City of New Hampton § 61.14 (emphasis added). The record reveals that the application submitted by Hansen contained no more than a sketch of the proposed garage with basic perimeter dimensions and the notation of "steel/steel" for wall and roof covering. No further statement regarding building materials (including wood uprights, supports, or insulation) was furnished. This sketchy application, the city contends, falls far short of compliance with the ordinance, making the permit issued by Markle illegal and subject to withdrawal.

■ The city's position, affirmed by the district court, is supported by both the law and the evidence. If a building permit is issued in accordance with pertinent ordinances, "it may not be revoked after the permit holder has relied thereon if there is no violation of the applicable ordinance." *City of Lamoni,* 392 N.W.2d at 510. But if the record reveals lack of compliance with or authorization under the ordinance, "the deficiency is deemed jurisdictional and reliance will not bar a revocation." *Id.* This

is so, we have held, because the zoning officer was without authority to grant the permit in the first place. *Id.*

Hansen insists on appeal that Markle's issuance of the permit, even if erroneous, rested on a reasonable interpretation of the ordinance rather than a lack of compliance with its mandate. Citing *Crow v. Board of Adjustment of Iowa City,* 227 Iowa 324, 328–29, 288 N.W. 145, 147 (1939), appellants claim a permit granted on the basis of an interpretation that is fairly debatable when issued protects the permit holder who in good faith relies on it. Appellants' reliance on *Crow,* however, is misplaced.

In *Crow* the record plainly revealed that the permit holder complied with all applicable regulations in securing the permit; only later did neighboring landowners protest an interpretation of the applicable zoning ordinance accepted by the zoning officer and relied on by the permittee. *Crow,* 227 Iowa at 326–27, 288 N.W. at 146. Here the record reveals an utter disregard for the permit application requirements, both by the applicant and the former zoning administrator. Hansen's lack of compliance—and Markle's evident complicity—is compounded by the fact the proposed construction will be in a fire district, amplifying concern for building material safety. Accordingly we find no error in the district court's rejection of Hansen's claim to a vested interest. The permit, when issued, was unlawful and furnished no basis for reliance by the appellants. *See City of Marshalltown v. Reyerson,* 535 N.W.2d 135, 137 (Iowa App.1995) ("Obtaining a building permit does not grant protection against a city ordinance."). We affirm the district court on this ruling, including its order enjoining further construction pending issuance of a new building permit.

B. *Ordinance Interpretation.* The parties' principal squabble at trial, and now on appeal, is over the district court's interpretation of city ordinance 61.16. Resolution of the controversy is essential to determining the specifications required for the issuance of a new building permit. Hansen has consistently maintained that a steel-clad pole building meets ordinance 61.16's requirement that "[t]he building or structure shall be enclosed on all sides with walls constructed [of fire-resistant materials, including steel]." The city convinced the district court, and urges on appeal, that the words "building or structure shall be enclosed" really means the building's *walls* must be enclosed "on all sides" with fire-resistant material. Hansen argues on appeal this is an unwarranted expansion of the ordinance's requirements. We agree.

Several fundamental principles guide our analysis. Ordinances enacted under authority delegated to local governments are generally considered extensions of state statutes and, thus, construed liberally to effect their purpose. *Kordick Plumbing & Heating Co. v. Sarcone,* 190 N.W.2d 115, 117 (Iowa 1971). An ordinance must be considered in its entirety, giving each section due regard so that the enactment, as a whole, is given its "natural and intended meaning." *Id.* As already noted, however, zoning ordinances are considered extensions of the police power and must be strictly construed in favor of the free use of property. *Id.; accord Ernst,* 522 N.W.2d at 602. Thus a zoning restriction may not be extended by implication or interpretation. *Steinlage v. City of New Hampton,* 567 N.W.2d 438, 442 (Iowa App. 1997).

To support its argument that "enclosed building" means "enclosed walls," the city stresses the fire code's overall emphasis on fire safety. Ordinance 61.16 plainly requires three-inch fiberglass insulation on a steel building. The reason for the insulation requirement, the city urges, is not to prevent heat loss but to retard the spread of fire. To advance that purpose, the city insists, the insulation must be held in place "in some fashion." Enclosing the walls "on all sides" with fire-resistant material, such as steel or gypsum board, would keep

the insulation in place and achieve the fire-safety purpose of the ordinance. Likewise, the ceiling must be enclosed to prevent fire from spreading in the rafters. In conclusion, the city argues, "[t]he ordinance should be construed so as to permit the City to impose as many fire-resistant requirements as is reasonable."

■ ■ We are unswayed by the city's argument largely because we perceive no ambiguity in the ordinance under examination. It is axiomatic that legislative intent is shown by what an ordinance says, rather than what it should or might have said. *Kordick,* 190 N.W.2d at 118. We have thoroughly read the building restrictions within New Hampton's fire code and agree that fire safety is undoubtedly the goal of these provisions. But nowhere do we find the requirements or reasoning to justify the interpretation of ordinance 61.16 advanced here by the city. By its terms, the ordinance plainly requires the *building* to be enclosed with fire-resistant materials, not the individual walls or roof. While the safety measures identified by the city should perhaps be incorporated into the code, they are not there yet. And the district court abridged essential rules governing zoning law interpretation to find them. Its ruling on the point must be reversed.

## IV. Summary and Disposition.

We agree the city cannot be estopped from revoking appellants' original permit because it was issued unlawfully, but we conclude that any resubmitted plans and specifications for the building must be measured by the plain language of ordinance 61.16, not the expansion by implication approved by the district court. We have carefully considered all other issues raised by appellants on appeal, whether discussed or not, and find them without merit. Accordingly, we reverse on the district court's interpretation of ordinance 61.16 but affirm the issuance of the injunction pending appellants' resubmission of a building permit application completed in conformity with this opinion. We also affirm that portion of the court's order permitting the appellants to resubmit a building permit application and complete construction within 180 days from the entry of this decision in order to preserve their rights under the option to purchase.

**AFFIRMED IN PART AND REVERSED IN PART.**