# IN THE SUPREME COURT OF IOWA

No. 06–1487

Filed November 21, 2008

**CHAMBERLAIN, L.L.C.,**

Appellant,

**vs.**

**CITY OF AMES, IOWA and
AMES BOARD OF APPEALS,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Story County, Dale E. Ruigh, Judge.

Appellant challenges summary judgment dismissal of its suit challenging the denial of an occupancy permit. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

John F. Lorentzen and John T. Clendenin of Nyemaster, Goode, West, Hansell & O'Brien, Des Moines, for appellant.

William A. Wickett and Jason W. Miller of Patterson Law Firm, L.L.P., Des Moines, and Jason C. Palmer and Andrew C. Johnson of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees.

**STREIT, Justice.**

An Ames developer planned to build an apartment complex with loft space that could be used for sleeping or storage. Uncertain whether the lofts were permissible under the Ames Municipal Code, the developer requested an interpretation of the code from the city's building official, who concluded the lofts were permissible. When the building was completed, the city denied the developer's application for a certificate of occupancy because it found the lofts violated the ceiling height requirements for habitable space. The developer appealed to the city's board of appeals which upheld the denial of certification. The developer then filed actions in the district court on this issue as well as asserting recovery on the basis of promissory estoppel, equitable estoppel, and vested rights. The district court and court of appeals rejected all claims on summary judgment dismissal. On further review, the developer maintains issue preclusion bars the city from essentially withdrawing the building official's interpretation of the code. Because the interpretation was not a final decision, it is not entitled to preclusive effect. Further, because the building official's interpretation was contrary to the building code, the developer did not acquire vested rights in the interpretation. We affirm the decision of the court of appeals and the judgment of the district court.

## I. Facts and Prior Proceedings.

The owners of Chamberlain, L.L.C. planned to build a four-story mixed-use complex near the Iowa State campus. The first floor would contain retail space, and the upper floors would contain apartment units. The design for some of the apartments included a loft or shelf area that could be used as sleeping or storage space. The lofts provided 184 square feet of surface area, forty-five inches from the ceiling, and

were accessible by stair-ladders. The lofts had electrical outlets, data ports for internet access, lighting (and light switches), and carpeting. Since Chamberlain was uncertain whether the loft-shelf areas would comply with the city's building code requirements, it sought approval from the Ames building official before proceeding with the project.

In August or September 2003, two Chamberlain representatives and the company's architectural consultant met with the Ames building official and the Ames fire inspector. While the parties dispute whether actual design drawings with dimensions were reviewed during the meeting, all agree the topic of the meeting centered on whether the loft areas would be acceptable under the building and fire codes. The fire inspector expressed concern that additional protections would be needed if the spaces would be used for sleeping. The building official then sought input on the design at a staff meeting of city building inspectors.

The building official called Chamberlain and indicated the lofts were permissible so long as Chamberlain installed smoke detectors and sprinklers above and below the lofts. The building official interpreted the loft areas to be extensions of other code-compliant rooms, thus excluded from ceiling height restrictions. He believed this interpretation was consistent with the building code's intent and purpose. Chamberlain continued to develop the concept, and the city issued a building permit in January 2004 after reviewing Chamberlain's phased project plans.

Chamberlain built the structure and secured tenants for the units. When the building was nearly complete, the Ames fire chief/acting building official[1] stated in a letter that the loft areas did "not meet minimum height requirements for habitable space" and a certificate of

---

[1]The building official who provided Chamberlain with his interpretation of the code no longer worked for the city.

occupancy would not be issued unless significant modifications were made to the apartments. A memo from the fire chief to the city manager stated inspectors began noticing that the loft areas would be treated as living space in May 2004, and some tenants and parents of tenants had complained to the city due to concerns about the reduced height in the loft areas.

Chamberlain appealed the fire chief's determination to the city's board of appeals. The board found the fire chief's interpretation "not unreasonable" and determined the certificate of occupancy was properly withheld. The city issued a certificate of occupancy only after Chamberlain barricaded the loft areas to prevent their use.

Chamberlain filed two actions in district court. First, it filed a petition for writ of certiorari seeking a declaration that Chamberlain was illegally denied a certificate of occupancy when it justifiably relied on a valid code interpretation made by an authorized building official. A second petition was filed in equity, contending the city was prevented from applying a new interpretation of the building code through the doctrines of equitable estoppel, vested rights, or promissory estoppel. The cases were consolidated, and both parties moved for summary judgment.[2] The district court held there were no false representations or exceptional circumstances to support an equitable estoppel claim, and Chamberlain's promissory estoppel claim failed because there was no "clear and definite promise" to enforce the interpretation as to the lofts. Further, the court determined Chamberlain did not have vested rights in the building permit because the building did not comply with the building code. Lastly, the court rejected Chamberlain's claim the original

---

[2]The district court did not issue a ruling with regard to the petition for writ of certiorari, and therefore, it is not before us.

building official's determination prevented a new interpretation by the board of appeals through issue preclusion. Chamberlain appealed each of these conclusions.

We transferred the case to the court of appeals, which affirmed the district court's decision in its entirety. Chamberlain sought further review, claiming the building official's initial determination of the building code was an adjudication entitled to preclusive effect. We granted further review.

## II.  Scope of Review.

A ruling on a motion for summary judgment is reviewed for correction of errors at law. *City of Johnston v. Christenson*, 718 N.W.2d 290, 296 (Iowa 2006). Summary judgment is properly granted

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3). We examine the facts "in the light most favorable to the party opposing the motion for summary judgment." *Richardson v. The Commodore, Inc.*, 599 N.W.2d 693, 696 (Iowa 1999).

When presented with an application for further review from the court of appeals, we may consider "all of the issues properly preserved and raised in the original briefs." *Bokhoven v. Klinker*, 474 N.W.2d 553, 557 (Iowa 1991). "[W]e may review any or all of the issues initially raised on appeal . . . whether or not they are specifically brought to our attention in the applications for further review." *Id.*

## III.  Merits.

Although Chamberlain did not raise the issue of vested rights in the application for further review, we have decided to review the court of

appeals decision on vested rights in addition to the preclusion issue raised on further review. *Id.*

**A. Issue preclusion.** Today we decide whether the building official's initial interpretation of the building code vis-à-vis the lofts is entitled to preclusive effect. Issue preclusion means "that when an issue . . . has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Christenson,* 718 N.W.2d at 297 (citations omitted). A party asserting issue preclusion must establish the following:

> (1) the issue concluded must be identical, (2) the issue must have been raised and litigated in the prior action, (3) the issue must have been material and relevant to the disposition of the prior action, and (4) the determination . . . in the prior action must have been necessary and essential to the resulting judgment.

*Iowa Elec. Light & Power Co. v. Lagle,* 430 N.W.2d 393, 397 (Iowa 1988) (quoting *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981)). An agency determination may be entitled to preclusive effect if the parties had a full and fair opportunity to litigate the issue and if the determination was considered final. *Id.* at 397–98 (citing the Restatement (Second) of Judgments § 83 (1982)).

The building official's interpretation of the code was not entitled to preclusive effect because the interpretation was not a final decision. Chamberlain argues the city was required to file a writ of certiorari if it disagreed with the building official's interpretation. Because the time for filing a writ of certiorari has long since passed, Chamberlain claims the city acted illegally when it refused to issue a certificate of occupancy. We disagree.

The fact that the city failed to file a writ of certiorari challenging the building official's interpretation does not make the building official's

decision "final." Both the International Building Code, adopted by the City of Ames, and the Ames Municipal Code contain provisions confirming the conditional nature of the building official's interpretation. Int'l Bldg. Code §§ 104.1, 105.4 (2003); Ames, Iowa, Mun. Code §§ 5.106(4), (5), 5.131(1), (2) (2003). Section 104.1 of the International Building Code grants the building official the authority to give interpretations of the code:

> The building official is hereby authorized and directed to enforce the provisions of this code. The building official shall have the authority to render interpretations of this code and to adopt policies and procedures in order to clarify the application of its provisions. *Such interpretations, policies and procedures shall be in compliance with the intent and purpose of this code.* Such policies and procedures shall not have the effect of waiving requirements specifically provided for in this code.

Int'l Bldg. Code § 104.1 (emphasis added). Thus, although the building official is empowered to provide interpretations of the code, he is restricted from being able to make interpretations that directly contradict or ignore the plain provisions of the code.

The Ames Municipal Code also indicates that the building official's interpretations cannot be considered final adjudications by which the building official and the city will forever be bound unless the city files a timely writ-of-certiorari action. Regardless of prior interpretations, the building official can deny a building permit application if the plans do not conform "to the requirements of the Code and other pertinent laws and ordinances." Ames, Iowa, Mun. Code § 5.106(4). Moreover, even after an interpretation has been made and/or a building permit has been issued, the Ames Municipal Code provides:

> The issuance of a permit or approval of plans and specifications shall not be construed to be a permit for or approval of any violation of any of the provisions of this

> Code. No permit appearing to give authority to violate or cancel the provisions of this Code shall be valid. . . . The issuance of a permit based upon plans and specifications shall not prevent the Building Official from thereafter requiring the correction of errors in said plans and specifications or from preventing building operations being carried on thereunder when in violation of this Code or of any other ordinance of the City.

*Id.* § 5.106(5); *accord* Int'l Bldg. Code § 105.4. Finally, even after the certificate of occupancy has been granted, various officials are empowered, regardless of prior interpretations, to initiate abatement action against a building if it is "manifestly unsafe" or violates any code, ordinance, or regulation. Ames, Iowa, Mun. Code § 5.131(1), (2); Int'l Bldg. Code § 110.4.

These provisions demonstrate an interpretation of the code by the building official is not an adjudication of rights unalterable by the city. The city is empowered to deny an occupancy permit based on safety concerns or when the building does not comply with the provisions of the code. Ames, Iowa, Mun. Code § 5.106(5); Int'l Bldg. Code § 105.4. In our case, the fire chief/acting building official determined the lofts were both unsafe and in violation of the building code. Int'l Bldg. Code § 1208.2. The lofts had only forty-five inches of headroom, and the building code requires seven and one-half feet for habitable spaces. *Id.* Even though the building official interpreted the loft areas to be extensions of other code compliant rooms, thus excluded from ceiling height restrictions, such an interpretation directly contradicts the plain provisions of the code. The loft areas were the size of a standard bedroom (148 square feet), and considering a space of that size to be an extension of another room seems illogical and plainly contrary to the code requirements. *See* Int'l Bldg. Code § 1208.3.

If a prior interpretation is later altered, the building owner has the right to a hearing in front of the board of appeals and afterwards judicial review. Int'l Bldg. Code § 112. Chamberlain exhausted these remedies when it appealed the city's interpretation that the lofts violated the ceiling height restrictions of the code and lost. The building official's initial interpretation of the code was not a final decision, and therefore, we hold it is not entitled to preclusive effect.

**B. Vested Rights.** A building official's interpretation of the building code may be binding in certain instances under the doctrine of vested rights. Generally, a city is not estopped from revoking a validly issued building permit. *B & H Invs., Inc. v. City of Coralville*, 209 N.W.2d 115, 118 (Iowa 1973). However, when the permit holder makes expenditures in reliance on the permit, he may acquire vested rights in that permit, and the city may be estopped from revoking the permit. *Id.*; *see also City of Lamoni v. Livingston*, 392 N.W.2d 506, 510 (Iowa 1986). But, if the permit was not validly issued or if the building does not comply with applicable requirements, a permit can be revoked notwithstanding the permit holder's reliance. *City of New Hampton v. Blayne-Martin Corp.*, 594 N.W.2d 40, 44–45 (Iowa 1999).

As the building official has statutory authority to provide interpretations that are consistent with the code, an interpretation by the building official is akin to a building permit for the purposes of a vested rights analysis. Thus, so long as the interpretation does not contradict the plain provisions of the building code, an individual may acquire vested rights in that interpretation if he or she made expenditures in reliance on the interpretation. When the building official's interpretation resolves some kind of ambiguity or interprets an indefinite provision of

the building code, a party can enforce that interpretation under the theory of vested rights.

In this case, however, the lofts, measuring 148 square feet (the size of a standard room) with forty-five inches of headroom, did not comply with the building code, which requires a ceiling height of seven and one-half feet for all habitable spaces. Int'l Bldg. Code § 1208.2. Although the building code does permit the building official to approve alternate designs, these designs must comply with the intent of the code and meet applicable safety requirements. *Id.* § 104.11. Thus, even though Chamberlain made substantial expenditures in reliance on the building inspector's interpretation and the building permit, Chamberlain did not acquire vested rights to an occupancy certificate since the lofts violated the plain provisions of the code.

## VI. Conclusion.

Because the building official's interpretation of the code with respect to the lofts was not a final decision, Chamberlain is not entitled to utilize the doctrine of issue preclusion. Further, as the lofts do not comply with the building code, Chamberlain did not acquire vested rights in the building official's interpretation. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except Baker, J., who takes no part.