# IN THE COURT OF APPEALS OF IOWA

No. 17-0090
Filed February 21, 2018

**JOHN WENDELL WOODS, RONALD WOODS, C&W FARMS and WOODS CONSTRUCTION, INC, JAMES RICHARD COSTELLO and CITY OF FAIRBANK,**
        Plaintiffs-Appellees,

**vs.**

**FAYETTE COUNTY ZONING BOARD OF ADJUSTMENT, CATHERINE MILLER AS FAYETTE COUNTY ZONING ADMINISTRATOR, DANTE WIND 6, L.L.C., GALILEO WIND 1 L.L.C., VENUS WIND 4 L.L.C., MASON WIND L.L.C., OPTIMUM RENEWABLES L.L.C., and THOMAS G. ROURKE and KIMBERLY K. ROURKE,**
        Defendants-Appellants.
_____

        Appeal from the Iowa District Court for Fayette County, John Bauercamper,

Judge.


        Defendants appeal the district court's reversal of the decision of the Fayette

County Zoning Board of Adjustment to uphold the issuance of permits for the

construction of three wind turbines. **AFFIRMED.**



        Alexander M. Johnson and Adam C. Van Dike of Brown, Winick, Graves,

Gross, Baskerville and Schoenebaum, P.L.C., Des Moines, for appellants Dante

Wind 6 L.L.C., Galileo Wind 1 L.L.C., Venus Wind 4 L.L.C., Mason Wind L.L.C.,

Optimum Renewables L.L.C., Thomas G. Rourke, and Kimberly K. Rourke.

James J. Burns of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellants Catherine Miller as Fayette County Zoning Administrator and Fayette County Zoning Board of Adjustment.

Heather A. Prendergast, Carter J. Stevens, and David W. Hosack of Roberts, Stevens & Prendergast, P.L.L.C., Waterloo, for appellee City of Fairbank.

Patrick B. Dillon of Dillon Law, P.C., Sumner, for appellees Ronald Woods, John Woods, James Costello, C&W Farms, and Woods Construction, Inc.

Heard by Danilson, C.J., and Vaitheswaran and Bower, JJ.

**VAITHESWARAN, Judge.**

A zoning administrator granted applications for zoning compliance, which allowed the construction of wind turbines on agricultural land. The board of adjustment denied appeals from the decision. The district court, however, concluded the zoning administrator acted illegally in granting the applications. We must decide if the district court's decision was correct.

## I. *Background Facts and Proceedings*

The Fayette County Zoning Ordinance lists several "permitted uses" in agriculturally-zoned districts, including use for "[e]lectrical and natural gas transmission and regulating facilities." The ordinance also authorizes "special use permits" following notice and hearing:

> Section 9. AG DISTRICT REGULATIONS (Agricultural Districts).
> <u>Statement of Intent</u>. The AG District is intended and designed to preserve agricultural resources and protect agricultural land from encroachment of urban land uses.
> > A. <u>Principal Permitted Uses</u>. Only the use of structures or land listed in this section shall be permitted in the AG District.
> > > . . . .
> > > *12. Electrical and natural gas transmission and regulating facilities.*
> > B. <u>Special Use Permits</u>. The following uses may be permitted in the AG District subject to approval by the Board of Adjustment after notice and public hearing. In its determination upon the particular use at the location requested, the Board shall consider all of the following conditions [not relevant for purposes of this appeal]. . . .

*Zoning Ordinance for the Unincorporated Area of Fayette County, Iowa, January 1973* (revised March 1976) (emphasis added).

Thomas and Kimberly Rourke granted easements to Dante Wind 6 L.L.C., Galileo Wind 1 L.L.C., Venus Wind 4 L.L.C., Mason Wind L.L.C., and Optimum Renewables L.L.C. (collectively—including the Rourkes—"Optimum") to construct

three wind turbines on their agriculturally-zoned property. Optimum applied to the Fayette County Board of Adjustment for special use permits to construct the turbines. The Board denied the application.

When Optimum contested the denial, the Fayette County Zoning Administrator requested a legal opinion from the county attorney. After examining the permitted use language for "[e]lectrical and natural gas transmission and regulating facilities," the county attorney opined, "To the extent [wind turbines] can be determined to transmit electrical power," and "[i]n the absence of specific rules or regulations regarding wind turbines, then no special use permit is called for or required by the Fayette County Zoning Ordinances and . . . placement of them in the Ag District would be legal without a special use permit." The zoning administrator thereafter approved Optimum's applications for zoning compliance.

The City of Fairbank ("City") within Fayette County as well as Fairbank residents or businesses Ron Woods, John Woods, James Costello, C&W Farms, and Woods Construction (collectively, "Woods") appealed the approval of Optimum's applications. They expressed concern that construction of the wind turbines would disrupt their use and enjoyment of their land and would diminish the value of the land in and around the City. After considering arguments from all sides, the Board voted to deny the appeals.

The City and Woods petitioned the district court for writs of certiorari. The district court held an evidentiary hearing at which a law professor from the West Virginia University College of Law testified to the meaning of terms in the ordinance, the zoning administrator testified about her decision, and the City mayor

testified to who was present at the hearing before the Board and certain procedures used by the Board.

Following the hearing, the district court declared the approvals of the applications for zoning compliance "illegal and void" and sustained the writs. In a posttrial ruling, the court remanded the applications "to the Fayette County Zoning Board of Adjustment and the Fayette County Zoning Administrator to take all actions required by law to implement the ruling of the district court declaring these permits void and bring the offenders into compliance." The court stated, "Such actions should include the removal of all structures which were erected without valid permits as determined by the court." Optimum and the Board appealed.

## II. Analysis

The district court framed the core question as follows:

> All the issues in this case center on the interpretation of the language of the zoning ordinance, in order to determine whether or not the zoning administrator and the board of adjustment have correctly interpreted and applied the ordinance to the uncontroverted facts of this case. The question is whether or not a wind turbine that produces electricity is or is not an electrical transmission and regulating facility.

The court answered the question as follows:

> The petitioner's argument that electrical transmission facilities are limited to electrical power grid apparatus such as poles, lines, and other items used to move electrical power from the source of its production to the end users of electric current to light and power their homes, plants, businesses, etc. is persuasive, based upon the ordinary dictionary usage of these terms, together with the industry and government uses of those terms cited by the petitioners.

On appeal, Optimum argues the district court (1) erred "by failing to limit its review to whether the board's decision was supported by substantial evidence" and (2) "improperly considered additional evidence because only questions arising

upon the existing record were presented for review." The Board argues its findings "were supported by the evidence" and it "applied the proper rule of law."

We begin with our scope of review. As Optimum asserts, a board's fact findings are reviewed for substantial evidence. *Bontrager Auto Serv.*, *Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 495 (Iowa 2008). But neither the zoning administrator nor the board made fact findings and, in any event, the material facts—the construction of three wind turbines on agriculturally zoned land—were undisputed. The substantial evidence standard of review is not implicated.

The question before the zoning administrator, the Board, and the district court involved an interpretation of the zoning ordinance. "Although we give deference to the board of adjustment's interpretation of its city's zoning ordinances, final construction and interpretation of zoning ordinances is a question of law for us to decide." *Lauridsen v. City of Okoboji Bd. of Adjustment*, 554 N.W.2d 541, 543 (Iowa 1996). Our review is for errors of law. *Ackman v. Bd. of Adjustment for Black Hawk Cty.*, 596 N.W.2d 96, 100 (Iowa 1999).

This brings us to the record for review. By statute, a challenge to a decision of a county board of adjustment is tried de novo in the district court. Iowa Code § 335.21 (2015). The court "may take evidence" if "testimony is necessary for the proper disposition of the matter." Testimony is necessary "[o]nly when the illegality does *not* appear in the record made before the board," as for example, a conflict of interest. *Bontrager*, 748 N.W.2d at 494.

Here, the illegality—a claimed misinterpretation of the zoning ordinance—appeared in the record before the board. The county attorney's opinion letter on which the board's decision was predicated was part of the "return on writ of

certiorari." The Iowa Environmental Council also argued in favor of the zoning administrator's decision. These opinions were discussed at the hearing before the board of adjustment, as were contrary views about the meaning of the ordinance. A transcription of the hearing was included with the writ.

The record before the board was sufficient to resolve the legality of the board's interpretation of the ordinance, a question that was exclusively within the court's purview. *See Lauridsen*, 554 N.W.2d at 543. No additional record was necessary for proper disposition of the matter. The West Virginia University law professor's testimony was particularly problematic because, as Optimum points out, he "improperly sought to advise the court on the proper interpretation of the underlying zoning ordinance." The remaining witnesses who testified before the district court also added little if anything that was not already in the record. The zoning administrator's testimony was largely a rehash of the duly admitted records. As for the mayor's testimony, his summary of who was present at the board meeting and the procedures used by the board were apparent in the transcript of board proceedings.

We conclude the district court erred in taking additional evidence on the only question before it, "whether or not a wind turbine that produces electricity is or is not an electrical transmission and regulating facility." We will limit our review to the records included in the return of the writ of certiorari.[1]

---

[1] Even if we were to consider the evidentiary record created in the district court, we would reach the same conclusion.

We turn to the district court's interpretation of the ordinance. "In the absence of a legislative definition, we strive to give words their ordinary meaning." *Simon Seeding & Sod, Inc. v. Dubuque Human Rights Comm'n*, 895 N.W.2d 446, 461 (Iowa 2017); *Kordick Plumbing & Heating Co. v. Sarcone*, 190 N.W.2d 115, 117 (Iowa 1971) ("Generally speaking, ordinances promulgated pursuant to authority delegated to a local governing body are extensions of state statutes and are to be construed as statutes . . . ."). "The ordinance must be read as a whole, and each section thereof given consideration so as to give the ordinance its natural and intended meaning." *Kordick*, 190 N.W.2d at 117-18.

It is undisputed wind turbines "generate" electricity. *See Merriam-Webster's Collegiate Dictionary* 945 (3rd ed. 2002) (defining "generate" as "to bring into existence" and "to originate by a vital, chemical, or physical process" such as "generate electricity"). The question is whether they "transmit" and "regulate" electricity within the meaning of the ordinance. The ordinance does not define those terms. Looking to the ordinary meaning, "transmit" is defined as "to send or convey from one person or place to another" and "to cause or allow to spread." *Merriam-Webster's Collegiate Dictionary* 2429; *see also Black's Law Dictionary* 1505 (7th ed. 1999) (defining "transmit" as "to send or transfer (a thing) from one person or place to another"). The dictionary defines "regulate" as "to bring order, method, or uniformity to" and "to fix or adjust the time, amount, degree, or rate of." *Merriam-Webster's Collegiate Dictionary* 1913. Based on the "ordinary dictionary usage of these terms," the district court found that the wind turbines would not fall within the permitted use language. On this record, we agree.

The ordinance provision begins with the sentence, "Only the use of structures or land listed in this section shall be permitted in the AG District." The ordinance goes on to provide a detailed listing of permitted uses, including dwellings, places of worship, schools, recreational areas, airports, cemeteries, kennels, nurseries, and water supply and sewage treatment facilities. All are commonly understood structures or facilities. Last but not least are "[e]lectrical and natural gas transmission and regulating facilities." As commonly understood, this language would not encompass wind turbines. Although the Iowa Environmental Council cited industry definitions of these systems and cogently argued the systems also transmitted and regulated electricity, none of the wind turbine companies produced evidence at any stage of the proceedings on the transmission and regulation capacities of their systems. We simply do not know whether the three turbines would have comported with industry specifications. *Cf. Hamby v. Bd. of Zoning Appeals of Area Plan Comm'n of Warrick Cty.*, 932 N.E.2d 1251, 1255 (Ind. Ct. App. 2010) (acknowledging homes traditionally received electricity from a power company via a power plant, but stating the court would not construe terminology within an ordinance to prevent the implementation of new technologies and affirming the grant of a variance for the construction of a residential wind turbine as an accessory use). In the absence of a more comprehensive record on the nature of the three wind turbines, and accepting the ordinary meaning of the terms "transmit" and "regulate," we conclude the district court did not err in excluding wind turbines from "electrical transmission and regulating facilities." We affirm the sustention of the writ of certiorari.

**AFFIRMED.**